

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2022
AUGUST 23, 2022 SESSION

**UNITED STATES OF AMERICA**

v.  CRIMINAL NO. 2:22-cr-00163
18 U.S.C. § 1832(a)(5)
18 U.S.C. § 1832(a)(3)
18 U.S.C. § 1343
18 U.S.C. § 1001(a)(3)
18 U.S.C. § 1001(a)(2)
18 U.S.C. § 2

**DAVID GERALD MINKKINEN and
SIVARAMAN SAMBASIVAM**

# INDICTMENT

The Grand Jury charges that:

## COUNT ONE

**Introductory Allegations**

*Subject Trade Secrets*

1. Deloitte is an international company that provides various financial and advisory services, including unemployment claims management services. Deloitte uses a proprietary web-based software platform named Unemployment Framework for Automated Claim & Tax Services ("uFACTS") to process unemployment insurance claims for state agencies. At all relevant times, Deloitte considered the uFACTS source code, database, use cases, software designs, schema, logic, artifacts, and architecture to be trade secrets. Deloitte took reasonable steps to maintain the secrecy of its trade secrets, along with other associated confidential and proprietary information. In addition, Deloitte's trade secrets and confidential and proprietary information derive independent economic value from not being generally known to, and not being readily ascertainable through

1

proper means by, the public.

*Sagitec and Defendant Employees*

2. Sagitec Solutions, LLC ("Sagitec") is a global "technology solutions" company headquartered in Saint Paul, Minnesota. Founded in 2004, Sagitec provides a variety of information technology products to private and public institutions.

3. In 2013, Sagitec launched its Unemployment Insurance ("UI") practice. Between June 2013 and December 2015, at least eleven Deloitte employees left Deloitte to work for Sagitec, including defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM**. At all relevant times, defendant **DAVID GERALD MINKKINEN** was a senior partner at Sagitec overseeing its UI practice, and defendant **SIVARAMAN SAMBASIVAM** was a senior partner at Sagitec overseeing client service delivery for the UI practice.

4. Before joining Sagitec, defendant **DAVID GERALD MINKKINEN** was the UI Practice Leader at Deloitte from May 2009 to June 2013, and defendant **SIVARAMAN SAMBASIVAM** was employed by Deloitte from April 2009 until September 2013, serving as the lead system architect for the uFACTS Solution Framework. Pursuant to their employment agreements with Deloitte, defendant **DAVID GERALD MINKKINEN**, defendant **SIVARAMAN SAMBASIVAM**, and other prior Deloitte employee-co-conspirators promised to not disclose any Deloitte trade secrets or any other confidential information, and they agreed to return any such information to Deloitte when they separated from the company.

*Trade Secret Theft*

5. Both before and after their departure from Deloitte, defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** copied, downloaded, obtained, and transmitted numerous Deloitte files, including trade secret information such as uFACTS source

code, data, and use cases, without authorization and in violation of their Deloitte employment contracts. These files were subsequently used by numerous Sagitec employees to design, develop, and market Sagitec's UI software, known as "Neosurance."

*The Consortium Unemployment Insurance Project*

6. In 2015, Sagitec won a bid to design, develop, and implement a replacement software system to process UI benefit claims, taxes, and appeals in the states of Maryland and West Virginia. The project was funded by federal grants from the United States Department of Labor.

7. The Maryland-West Virginia Consortium ("Consortium") contract with Sagitec provided, in pertinent part, that Sagitec "represent[ed], warrant[ed], and covenant[ed]" that its "Work Product, the Software, and the System shall not infringe or otherwise violate any intellectual property or other proprietary rights of a third party." Defendant **DAVID GERALD MINKKINEN** signed the contract on behalf of Sagitec, and served as the primary point of contact for the project. The Consortium contract indicated that Sagitec would be paid between $49,195,338 and $70,631,145 for its services. To date, more than $100 million has been expended on the project.

8. Workforce West Virginia ("Workforce WV") is a state government agency funded through the United States Department of Labor that oversees the state unemployment insurance program and a network of workforce development services. Workforce WV was the state's implementing agency for Sagitec's UI product and thus worked with Sagitec and other subcontractors to develop and install the new UI software platform. Workforce WV employees worked on the UI project in offices in Charleston, Clarksburg, and Morgantown, among other locations in the state, where they often remotely collaborated with Sagitec employees in Maryland

3

and elsewhere.

## The Conspiracy

9. From in or about July 2013 to in or about June 2021, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant **DAVID GERALD MINKKINEN,** defendant **SIVARAMAN SAMBASIVAM,** and other Sagitec employees, knowingly conspired to commit offenses in violation of 18 U.S.C. § 1832 (a)(1), (2), and (3). That is, the conspirators, with the intent to convert a trade secret, that was related to a product and service used in and intended for use in interstate and foreign commerce, to the economic benefit of Sagitec and persons who did not own the trade secrets, and knowing and intending that the offense would injure the owner of the trade secrets, knowingly conspired to:

- Steal and without authorization appropriate, take, conceal, and by fraud, artifice, and deception obtain trade secrets from the owner of the trade secrets, Deloitte;

- Without authorization copy, duplicate, download, upload, transmit, communicate, and convey trade secrets owned by Deloitte; and

- Receive and possess trade secrets owned by Deloitte, knowing the same to have been stolen, appropriated, obtained, and converted without authorization.

*Overt Acts*

10. In furtherance of the conspiracy, and to accomplish its objectives, defendant **DAVID GERALD MINKKINEN,** defendant **SIVARAMAN SAMBASIVAM,** and the other conspirators committed the following overt acts, among others, in the Southern District of West Virginia and elsewhere:

a) From approximately January 2016 until at least on or about April 8, 2019, defendant **DAVID GERALD MINKKINEN** and the other conspirators maintained and

constructively possessed material containing and derived from Deloitte's trade secrets on computers and servers that belonged to Workforce WV, and which were located in Charleston, Kanawha County, West Virginia.

b) On or about September 14, 2017, defendant **DAVID GERALD MINKKINEN** sent an email to investigating agents that was designed to conceal and misrepresent the ongoing possession, transmission, and use of Deloitte's trade secrets by defendant **DAVID GERALD MINKKINEN**, the other conspirators, and Sagitec.

c) On or about October 1, 2020, in a recorded interview with an investigating agent in Charleston, Kanawha County, West Virginia, defendant **DAVID GERALD MINKKINEN** made material misrepresentations about Sagitec's acquisition, possession, and use of Deloitte's trade secrets.

d) On or about March 12, 2021, in a recorded interview with an investigating agent in Charleston, Kanawha County, West Virginia, defendant **SIVARAMAN SAMBASIVAM** made material misrepresentations about Sagitec's acquisition, possession, and use of Deloitte's trade secrets.

In violation of Title 18, United States Code, Section 1832(a)(5).

## COUNT TWO

11. Paragraphs one through eight are incorporated herein by reference as if repeated and re-alleged in full.

12. From in or about 2015 until at least on or about April 8, 2019, at or near Charleston, Kanahwa County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendants **DAVID GERALD MINKKINEN and SIVARAMAN SAMBASIVAM**, with intent to convert a trade secret that was related to a product and service used in and intended for use in interstate and foreign commerce, for the economic benefit of another and others, other than the trade secret's owner, and knowingly and intending that the offense will injure any owner of the trade secret, knowingly possessed, and aided, abetted, counseled, commanded, induced, procured, and willfully caused the possession, of trade secret information owned by Deloitte, knowing the same to have been stolen, appropriated, obtained, and converted without authorization.

In violation of Title 18, United States Code, Sections 1832(a)(3) and 2.

## COUNT THREE

13. Paragraphs one through eight are incorporated herein by reference as if repeated and re-alleged in full.

14. From on or about September 17, 2015, until or about April 8, 2019, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant **DAVID GERALD MINKKINEN,** devised and intended to devise a scheme and artifice to defraud the Maryland-West Virginia Consortium to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

*The Scheme to Defraud*

It was part of the scheme to defraud that:

15. Defendant **DAVID GERALD MINKKINEN** obtained, transmitted, and used various forms of Deloitte intellectual property without authorization, including, but not limited to, copyrighted materials and trade secrets associated with uFACTS.

16. Defendant **DAVID GERALD MINKKINEN** knowingly facilitated and approved the use of Deloitte intellectual property to design, develop, and market Sagitec's UI software product.

17. In Sagitec's contract with the Consortium, defendant **DAVID GERALD MINKKINEN** falsely affirmed that Sagitec's UI software product would not infringe third party intellectual property rights.

18. Defendant **DAVID GERALD MINKKINEN** thereafter repeatedly concealed and misrepresented Sagitec's possession and use of Deloitte intellectual property.

19. On or about September 14, 2017, for the purpose of executing, and attempting to execute, and conceal the scheme to defraud the Maryland-West Virginia Consortium, and for

obtaining money and property, defendant **DAVID GERALD MINKKINEN** transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures and sounds, that is, he transmitted an email from the state of Minnesota to investigators in West Virginia and Virginia, which falsely denied any possession or misappropriation of Deloitte intellectual property.

In violation of Title 18, United States Code, Section 1343.

## COUNT FOUR

20. Paragraphs one through eight are incorporated herein by reference as if repeated and re-alleged in full.

21. On or about September 14, 2017, defendant **DAVID GERALD MINKKINEN** sent an unsolicited email to the investigative agents in this case. In the email, defendant **DAVID GERALD MINKKINEN** claimed, among other things, that "an individual in West Virginia" "made certain unfounded claims regarding Sagitec's software and services," which "were thoroughly vetted with consortium project leadership and the Maryland Attorney General."

22. Defendant **DAVID GERALD MINKKINEN** attached three documents to the September 14, 2017 email: two letters addressed to the Maryland Office of the Attorney General ("OAG") dated August 23, 2016, and January 15, 2017, which were responses to inquiries by the Maryland OAG about alleged misappropriation of intellectual property by Sagitec, and a January 25, 2017 letter from the Maryland OAG, which indicated that the inquiry was "closed" based on the information provided by defendant **DAVID GERALD MINKKINEN**.

23. On or about September 14, 2017, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN** willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating in an email attachment dated August 23, 2016 that "[c]ertainly the allegation that Sagitec has in any way misappropriated another party's property is defamatory." The statement and representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, Sagitec had, in fact, misappropriated Deloitte's intellectual property.

In violation of Title 18, United States Code, Section 1001(a)(3).

9

## COUNT FIVE

24. Paragraphs one through eight, 21 and 22 are incorporated herein by reference as if repeated and re-alleged in full.

25. On or about September 14, 2017, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN** willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating in an email attachment dated January 15, 2017, that "Sagitec has not obtained copies of any software, source code, or any other tangible software artifacts authored by Deloitte, a Deloitte subcontractor or consultant, or a Deloitte client." The statement and representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, Sagitec had, in fact, obtained copies of the Deloitte uFACTS source code and tangible software artifacts along with data tables, documentation, deliverables, and other works of authorship authored by Deloitte.

In violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT SIX

26.     Paragraphs one through eight, 21 and 22 are incorporated herein by reference as if repeated and re-alleged in full.

27.     On or about September 14, 2017, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN** willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating in an email attachment dated January 15, 2017, that "Sagitec has not incorporated any software, source code, or any other tangible software artifacts authored by Deloitte, a Deloitte subcontractor or consultant, or a Deloitte client into anything delivered to the MW Consortium." The statement and representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, Sagitec had, in fact, directly incorporated Deloitte uFACTS use cases and data into the MW Consortium.

In violation of Title 18, United States Code, Section 1001(a)(3).

## COUNT SEVEN

28. Paragraphs one through eight incorporated herein by reference as if repeated and re-alleged in full.

29. On or about October 1, 2020, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN**, during a recorded interview with a federal agent, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is: when asked whether he brought anything from Deloitte when he came to Sagitec, defendant **DAVID GERALD MINKKINEN** responded "No, and . . . that's entirely false." This representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, he in fact took Deloitte's intellectual property with him when he started his employment at Sagitec.

In violation of Title 18, United States Code, Section 1001(a)(2).

## **COUNT EIGHT**

30.     Paragraphs one through eight are incorporated herein by reference as if repeated and re-alleged in full.

31.     On or about October 1, 2020, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN**, during a recorded interview with a federal agent, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating that "[T]here's nothing in [Sagitec's] product [that] had any similarity to Deloitte whatsoever." This representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, Sagitec's Neosurance product had several functional and technical similarities with Deloitte's uFACTS product.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT NINE

32. Paragraphs one through eight are incorporated herein by reference as if repeated and re-alleged in full.

33. On or about October 1, 2020, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN**, during a recorded interview with a federal agent, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating that "I can assure you both that there was nothing of Deloitte technology that was used in [Sagitec's] solution, period." This representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, Deloitte technology, including software code and data tables, was incorporated in Sagitec's Neosurance product and used for its development.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT TEN

34. Paragraphs one through eight are incorporated herein by reference as if repeated and re-alleged in full.

35. On or about October 1, 2020, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN**, during a recorded interview with a federal agent, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, when asked if he left Deloitte with Deloitte use cases or similar material, defendant **DAVID GERALD MINKKINEN** responded that "No, no, and it wouldn't even be useful. Like if I took the [Deloitte] use case from New Mexico it wouldn't even be useful . . ., because they're, like I said, 30 percent different state by state. . . . [I]t wouldn't even make sense." These statements were false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, he took use cases from a Deloitte project in Massachusetts, transmitted them to Sagitec employees, and knew that they were used to develop Sagitec's Neosurance product.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT ELEVEN

36. Paragraphs one through eight are incorporated herein by reference as if repeated and re-alleged in full.

37. On or about October 1, 2020, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN**, during a recorded interview with a federal agent, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating that "If somebody was using the [Deloitte] use case from another state I'm not aware of it . . . ." This statement was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, he took use cases from a Deloitte project in Massachusetts, transmitted them to Sagitec employees, and knew that they were used to develop Sagitec's Neosurance product.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT TWELVE

38. Paragraphs one through eight are incorporated herein by reference as if repeated and re-alleged in full.

39. On or about March 12, 2021, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **SIVARAMAN SAMBASIVAM**, during a recorded interview with a federal agent, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is: When asked if he was "aware of whether any [former Deloitte employees who joined Sagitec] took Deloitte's intellectual property when they left Deloitte," **SIVARAMAN SAMBASIVAM** stated that "[I]t's hard for me to say whether they took it or not. . . . David [Minkkinen] has had some material, that I know of, some proposal material. I don't know if that's considered as intellectual property or not, but I've seen that." This statement was false because, as defendant **SIVARAMAN SAMBASIVAM** then and there knew, David Minkkinen obtained uFACTS source code and use cases from Deloitte's Massachusetts project, which **SIVARAMAN SAMBASIVAM** fully understood to be Deloitte's intellectual property.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT THIRTEEN

40. Paragraphs one through eight are incorporated herein by reference as if repeated and re-alleged in full.

41. On or about March 12, 2021, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **SIVARAMAN SAMBASIVAM**, during a recorded interview with a federal agent, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is: When asked if he took Deloitte "materials," **SIVARAMAN SAMBASIVAM** stated that "No, I did not." This statement was false because, as defendant **SIVARAMAN SAMBASIVAM** then and there knew, he took uFACTS data tables from Deloitte's Massachusetts project, along with other Deloitte documents and files.

In violation of Title 18, United States Code, Section 1001(a)(2).

UNITED STATES OF AMERICA

WILLIAM S. THOMPSON
United States Attorney

By: _____
Andrew R. Cogar
Special Assistant United States Attorney


Candina Heath, Senior Counsel
Department of Justice
Computer Crimes and Intellectual Property Section