UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**UNITED STATES OF AMERICA**

v.                                                                            CRIMINAL NO. 2:22-cr-00163

**DAVID GERALD MINKKINEN and
SIVARAMAN SAMBASIVAM,**

                  **Defendants.**

**GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS
FOR LACK OF VENUE AND ALTERNATIVE MOTION TO TRANSFER VENUE**

      Comes now the United States of America by Andrew R. Cogar, Special Assistant United States Attorney for the Southern District of West Virginia, and Candina Heath, Senior Counsel for the Department of Justice, Computer Crimes and Intellectual Property Section, who oppose the joint motion to dismiss and alternative motion to transfer venue filed by defendants Sivaraman Sambasivam and David Minkkinen  As explained below, the Court should deny both motions because, first, venue in this District is sufficiently pled in the indictment, and second, the defendants fail to establish that trial in this District would be unduly burdensome.

## I. BACKGROUND

      The indictment in this case charges the defendants with offenses relating to trade secret theft, wire fraud, and making false statements to a federal agent.  The charges stem from the defendants' theft of trade secrets and other intellectual property from their former employer, Deloitte, and their subsequent conversion and misappropriation of such intellectual property to develop a competing software product with their new employer, Sagitec.  In 2015, Sagitec won a contractual bid to deploy this software product ("Neosurance") in West Virginia and Maryland to

process unemployment claims, taxes, and appeals in those states. Thereafter, Sagitec employees, including the defendants, began to work with Workforce West Virginia employees to develop and implement the Neosurance product.

The underlying investigation commenced in West Virginia in 2016, when a Workforce West Virginia employee noticed that Sagitec's work product contained references to Deloitte projects in other states. Since then, the West Virginia Commission on Special Investigation, headquartered in Charleston, has served as the lead investigative agency, and the Department of Labor, Office of Inspector General, also has actively contributed to the investigation.

The indictment in the case was returned on August 23, 2022. The defendants were arraigned on September 15, 2022. On September 28, 2022, the defendants filed a joint motion to dismiss the indictment for lack of venue, or alternatively transfer venue to the District of Minnesota.

## II. ARGUMENT

The defendants' motion is wholly unfounded and should be denied. The allegations in the indictment in this case, which must be accepted as true at this stage, readily demonstrate venue to proceed in this District. And the defendants' alternative argument for venue transfer also fails as a misinformed attempt to forum shop.

**A.  Venue in the Southern District of West Virginia is clearly and sufficiently pled in the indictment, and any factual disputes on venue must be submitted to the jury.**

### 1. Legal Standards

"Venue lies in the State and in the district where the offense was 'committed.'" United States v. Wilson, 262 F.3d 305, 320 (4th Cir. 2001) (quoting U.S. Const. art. III, § 2, cl. 3 and Fed. R. Crim. P. 18). Therefore, to determine the propriety of venue, the Court must focus on the essential conduct elements of the offense and the location of the criminal acts. United States v.

Smith, 452 F.3d 323, 334–35 (4th Cir. 2006). "The inquiry into the place of the crime may yield more than one appropriate venue, or even a venue in which the defendant has never set foot." United States v. Bowens, 224 F.3d 302, 309 (4th Cir. 2000). When multiple counts are charged, venue must be proper for each count. Smith, 452 F.3d at 335.

On a motion to dismiss an indictment for lack of venue, the Court must assume the indictment's allegations are true. United States v. Engle, 676 F.3d 405, 412–13 (4th Cir. 2012); Boyce Motor Lines v. United States, 342 U.S. 337, 343, n. 16 (1952) ("It should not be necessary to mention the familiar rule that, [for purposes of a pretrial motion to dismiss], the allegations of the indictment must be taken as true."); see also United States v. Ferris, 807 F.2d 269, 271 (1st Cir. 1986) (noting "the unchallenged statement of proof of the prosecutor" must also be accepted as true for purposes of a motion to dismiss an indictment). Thus, to warrant dismissal of any charge in the indictment, a defendant must "demonstrate that the allegations therein, even if true, would not establish venue." Engle, 676 F.3d at 415 (citation omitted).

Any factual disputes concerning venue must be resolved by a jury. United States v. Ebersole, 411 F.3d 517, 526 n.10 (4th Cir. 2005); Engle, 676 F.3d at 412-13. Consequently, a pretrial evidentiary hearing on the question of venue would be improper and unnecessary. Engle, 676 F.3d at 415 (citing United States v. Jensen, 93 F.3d 667 (9th Cir. 1996)); see also id. n.6 ("Evidence beyond the face of the indictment should not be considered" for a pretrial motion to dismiss for improper venue.) (quotation omitted); United States v. Snipes, 611 F.3d 855, 866 (11th Cir. 2010); United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002) ("The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing.").

## 2. The indictment alleges essential criminal conduct in the Southern District of West Virginia in each count.

Each count of the indictment alleges that the defendants committed the charged offenses "within the Southern District of West Virginia." (Indictment, Dkt. #1, ¶¶ 9, 12, 14, 23, 25, 27, 29, 31, 33, 35, 37, and 39.) By itself, this clear designation of venue in the indictment warrants denial of the motion to dismiss. See Engle, 676 F.3d at 415-16 (holding that, based on the indictment allegation that a defendant committed the illegal acts in "the Eastern District of Virginia and elsewhere," the pretrial motion dismiss on venue grounds should have been denied); see also, e.g., United States v. Blackwell, 946 F.2d 1049, 1052 (4th Cir. 1991) ("Venue was clearly proper in the Middle District of North Carolina because the conduct for which defendants were charged was alleged to have occurred there.").

The individual charges against the defendants otherwise comport with the Fourth Circuit's venue standards for each statute at issue. With respect to the trade secret theft conspiracy charge in Count One, "[v]enue is proper in any district in which some act in furtherance of the conspiracy was committed." United States v. Moussaoui, 591 F.3d 263, 300 (4th Cir. 2010), as amended (Feb. 9, 2010). Here, each of the four alleged overt acts occurred within the Southern District of West Virginia. More specifically, the overt acts allege that Defendant Minkkinen and "other conspirators" maintained and constructively possessed Deloitte trade secrets in the District, and that both defendants made various misrepresentations to agents in the District. With respect to the latter category of overt acts, the defendants' presence in the District is not required to establish venue for conspiracy. E.g., United States v. Lange, 834 F.3d 58, 70 (2d Cir. 2016) (observing that, for conspiracy crimes, "venue lies both in the district where a telephonic communication in furtherance of a crime was made and where it was received") (citing cases); United States v.

Gonzalez, 683 F.3d 1221, 1225 (9th Cir. 2012) ("[B]ecause conspiracy is a continuing offense, the crime occurs both where a communication is made and where it is received.").

Count Two of the indictment charges the defendants with aiding, abetting, and willfully causing the unlawful possession of Deloitte trade secret information in the District. As with conspiracy, an aiding and abetting theory of liability permits venue where the principal crime occurred, regardless of whether the defendants are physically present in that venue. See United States v. Stewart, 256 F.3d 231, 244 (4th Cir. 2001).

Count Three exclusively charges Defendant Minkkinen with wire fraud. The defendants' motion does not challenge venue on this charge, even though the operative wire transmission corresponds to the second overt act charged in the conspiracy count. In all events, since the transmission was received in the Southern District of West Virginia, venue is proper for the wire fraud count. Ebersole, 411 F.3d at 527 (holding that, for wire fraud, venue is proper where wire transmission was sent or received).

Counts Four through Thirteen charge the defendants with making false statements to a federal agent in violation of 18 U.S.C. § 1001(a). Specifically, Counts Four through Six charge Defendant Minkkinen with making materially false statements in an email communication on September 14, 2017. Counts Seven through Eleven charge Defendant Minkkinen with making materially false statements in a recorded interview with investigative agents on October 1, 2020. And Counts Twelve and Thirteen charge Defendant Sambasivam with making materially false statements in a recorded interview with investigative agents on March 12, 2021.

For § 1001 charges, venue is proper in the district where the effect of the materially false statement "would be felt." United States v. Oceanpro Industries, Ltd., 674 F.3d 323, 329 (4th Cir. 2012). In Oceanpro, the defendant was convicted in the District of Maryland for making a false

statement to federal law enforcement officers during an in-person interview in the defendant's Washington, D.C. office. Id. at 327. On appeal, the defendant argued that "because the crime was committed entirely in the District of Columbia, . . . venue for the crime was inappropriate in the District of Maryland." Id. at 328. The Fourth Circuit rejected that argument and affirmed the conviction, holding that, in view of the federal investigation in Maryland and "the potential effects" of the defendant's false statement on that investigation, venue was proper in Maryland. Id. at 329.

In this case, the defendants were the targets of an investigation in the Southern District of West Virginia, and their false statements to a federal agent could and did impact that investigation. Thus, consistent with Oceanpro, venue is proper in this District, regardless of the location of either the defendants or the interviewing agent during the interview. Moreover, as noted above, each of the false statement charges is sufficiently pled on its face to establish venue in the District at this juncture without consideration of the investigation's background.

For its part, the defendants' motion to dismiss repeatedly argues, without legal support, that to establish venue in this District, the indictment must allege the defendants were present in the District. But as explained above, relevant authority in this circuit and beyond uniformly rejects such a requirement.

The defendants also challenge the underlying factual basis of the indictment. In that vein, they request an evidentiary hearing to "establish that none of the alleged criminal actions occurred in this District." (Dkt. #37, at 21.) This Court, however, "lack[s] authority to review the sufficiency of evidence supporting an indictment." United States v. Wills, 346 F.3d 476, 488 (4th Cir. 2003). (citing United States v. Mills, 995 F.2d 480, 487 (4th Cir. 1983) and Costello v. United States, 350 U.S. 359, 363-64 (1956)); see also infra, II.A.1. "To permit preliminary trials on

essential facts, post-indictment, would 'run counter to the whole history of the grand jury institution, and would result in interminable delay but add nothing to the assurance of a fair trial.'" Snipes, 611 F.3d at 866 (quoting Costello, 350 U.S. at 363-64) (cleaned up).

Accordingly, on all counts, venue is proper in the Southern District of West Virginia, and the defendants are not entitled to any evidentiary hearing on the matter.

**B.     The defendants fail to demonstrate the propriety or need to transfer venue to the District of Minnesota.**

　　**1.     Legal Standard**

Under Rule 21(b) of the Federal Rules of Criminal Procedure, the Court "may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice." Nonetheless, "[t]here is a general presumption that a criminal prosecution should be retained in the original district." United States v. Bochene, 579 F. Supp. 3d 177, 182–83 (D.D.C. 2022) (quoting United States v. Bowdoin, 770 F. Supp. 2d 133, 138 (D.D.C. 2011)). A defendant may overcome that presumption "only by a showing that a trial there would be so unduly burdensome that fairness requires the transfer to another district of proper venue where a trial would be less burdensome." Id. at 182-83 (citing United States v. Spy Factory, Inc., 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (Sotomayor, J.) (quotation omitted).

Relying on the Supreme Court's decision in Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240 (1964), district courts consider ten factors to determine whether venue transfer is justified: (1) location of the defendant; (2) location of witnesses; (3) location of events likely to be in issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions in each district; and (10) any other specific element which might affect the transfer. Id.

at 243-44; see also United States v. Buensalida, 537 F. App'x 226, 229 (4th Cir. 2013) (unpublished) (directing district court to consider Platt factors) (citing United States v. Heaps, 39 F.3d 479, 482-83 (4th Cir. 1994), abrogated on other grounds by United States v. Cabrales, 524 U.S. 1 (1998)). "No one of these factors is dispositive, and '[i]t remains for the court to try to strike a balance and determine which factors are of greatest importance.'" United States v. Farkas, 474 F. App'x 349, 353 (4th Cir. 2012) (unpublished) (quoting United States v. Stephenson, 895 F.2d 867, 875 (2d Cir. 1990)).

    2.    **The Platt factors militate against transfer to Minnesota, and the defendants fail to establish any undue burden to proceed to trial in this District.**

The defendants' discussion of the Platt factors myopically focuses on the people and events in Minnesota associated with the case. To be sure, the defendants live in Minnesota, as do some witnesses and retained counsel. But Rule 21(b) "require[s] that a transfer for convenience satisfy the convenience of both parties." United States v. Miller, 314 F.R.D. 574, 576 (S.D. Ohio 2016) (quoting United States v. Jamal, 246 Fed. Appx. 351, 369 (6th Cir. 2007) (unpublished)); see also United States v. Guastella, 90 F. Supp. 2d 335, 340 (S.D.N.Y. 2000) ("Inconvenience to the defendant or his business is not, by itself, a sufficient basis for transfer of venue."). To that end, the defendants carefully avoid acknowledging that the lead case agent, lead Government counsel, and other witnesses live and work in West Virginia. The Government also intends to call witnesses from Maryland and Virginia who live within driving distance of Charleston, or who can reach Charleston via a short direct flight.

In addition, despite the defendants' claims to the contrary, the relevant events in this case did not exclusively occur in Minnesota. As alluded in the indictment, other key events in the case occurred in West Virginia and Maryland.

In conclusory fashion, the defendants further assert that "hailing" them and other witnesses to court "hundreds of miles away" would disrupt business for Deloitte and Sagitec. For purposes of venue transfer, however, any disruption of Deloitte's business is irrelevant because the defendants have not worked for that company since 2013. Defendant Minkkinen (at least) also no longer works for Sagitec. Moreover, Sagitec has been cooperating with the Government's investigation for approximately two years, so disruption of its business has minimal, if any, significance to the issue of transfer.

The defendants' complaint about the expense to defend the case in the District is unpersuasive. Both defendants have significant financial means. And the Government would incur substantial cost in transferring the venue to Minnesota, where no Government counsel or agents are based. "Merely shifting the burden of expense from one party to another is not a good reason for transfer." United States v. Kanner, No. 07-CR-1023, 2008 WL 2663414, at *7 (N.D. Iowa June 27, 2008); see also Guastella, 90 F. Supp. 2d at 340 (finding that the expense factor did not favor either party because the Government costs to relocate its prosecution team offset defense expenses); Bochene, 579 F. Supp. 3d at 184 (noting partially offsetting increase in prosecution expenses associated with venue transfer).

Similarly, the defendants' concerns about the relative accessibility of Charleston are overblown, if not ironic. They emphasize there are no direct flights from Minnesota to Charleston's Yeager Airport, but that means, of course, there are no direct flights from Charleston (or any other West Virginia airport, for that matter) to Minnesota. And with respect to the defendants' concerns about the potential impact of winter weather in West Virginia, the Minneapolis-St.Paul area receives twice as much snow (54.55 inches) on an annual basis than Charleston, West Virginia (27.26 inches). Caroline Delbert, "How snowfall levels have changed

across 100 U.S. cities," Stacker (Dec. 16, 2020), at https://stacker.com/stories/4020/how-snowfall-levels-have-changed-across-100-us-cities. Therefore, at best, the court accessibility factor has no impact on the venue transfer analysis.

The defendants also fallaciously contend that docket conditions in the District "weigh heavily in favor of transferring to Minnesota." Relying exclusively on Lex Machina, a LexisNexis analytics website, the defendants claim that "there are nearly 59,000 open pending cases in the Southern District of West Virginia, while there are less than 5,000 open pending cases in the District of Minnesota." (Dkt. #37, at 21.) On closer examination, however, these figures are neither accurate nor current. First, the defendants' Lex Machina search parameters encompassed "pending [cases] between 2009-01-01 and 2022-09-28," thus capturing more than 23 years of pending cases. (Dkt. #37-1, at 2 & 9.) Second, with respect to the 58,239 Southern District of West Virginia cases identified in the search, 57,165 of them were product liability cases, and most, if not all, of those cases were assigned to one judge (Goodwin), whose 23-year "pending" caseload was listed as 57,187. (Dkt. #37-1, at 12.)

Even without the gross search error, any reliance on Lex Machina for docket statistics would be inadvisable. As an illustration, Judge Goodwin's caseload on the website appears to be a substantial underestimation, because in the past twelve years alone he has handled more than 100,000 product liability multi-district litigation ("MDL") cases. See Hon. Joseph R. Goodwin, "Remand: The Final Step in the MDL Process — Sooner Rather than Later," UMKC Law Review: Vol. 89: No. 4, Article 19, available at https://irlaw.umkc.edu/lawreview/vol89/iss4/19. Otherwise, a much more credible, comprehensive, and timely source is available: the federal judiciary's own statistics.

Based on the current federal judiciary statistics, the Southern District of West Virginia offers the superior venue for trial in this case. (See Attachment A – Judicial Caseload Profiles for the Southern District of West Virginia and the District of Minnesota.)[1] As of June 30, 2022, the Southern District of West Virginia had 2,275 pending cases, compared to 8,048 pending cases in the District of Minnesota. Moreover, the current median time from filing to disposition of a felony criminal case in this District is 8.4 months—nearly half the disposition time in the District of Minnesota (15.1 months).

In summary, therefore, an objective review of the Platt factors does not reveal any undue burden on the defendants to proceed in this District.

---

[1] Both profiles were extracted from spreadsheets of data available at https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2022/06/30-2 (Table N/A—U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (June 30, 2022)).

## III.  CONCLUSION

The defendants' motion to dismiss woefully fails to demonstrate any facial deficiency of the indictment with respect to venue.  Their alternative motion for venue transfer likewise fails to show any undue burden warranting a new trial venue.  Accordingly, the Court should deny the defendants' motions.

        Respectfully submitted,

        WILLIAM S. THOMPSON
        United States Attorney

By:    /s/ Andrew R. Cogar
        Andrew R. Cogar
        Special Assistant United States Attorney
        WV Bar No. 9451
        300 Virginia Street, East
        Room 4000
        Charleston, WV 25301


        Candina Heath, Senior Counsel
        Department of Justice
        Computer Crimes & Intellectual Property
            Section

## CERTIFICATE OF SERVICE

I, Andrew R. Cogar, Special Assistant United States Attorney for the Southern District of West Virginia, hereby certify that on October 5, 2022, I electronically filed the foregoing **GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS FOR LACK OF VENUE AND ALTERNATIVE MOTION TO TRANSFER VENUE**, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants registered in CM/ECF in the above-referenced matter.

Respectfully submitted,
WILLIAM S. THOMPSON
UNITED STATES ATTORNEY

By: /s/ Andrew R. Cogar
Special Assistant United States Attorney