**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

               Plaintiff,

v.                                            CRIMINAL ACTION NO. 2:22-cr-00163

DAVID GERALD MINKKINEN
SIVARAMAN SAMBASIVAM,

               Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendants David Gerald Minkkinen's and Sivaraman Sambasivam's Motion to Recuse* (Document 146) and the *Government's Opposition to Defendants' Motion to Recuse* (Document 157), as well as the attached exhibits.   In addition, the Court has reviewed the *Government's Ex Parte Motion to Seal and Review Recusal Documents Ex Parte & In Camera* (Document 163) and the attached exhibits, submitted in response to the Court's *Order* (Document 161) requiring the United States to supply all documents and communications related to the decision to recuse the United States Attorney's Office for the Northern District of West Virginia, but permit Assistant United States Attorney Andrew Cogar to remain on the case. For the reasons stated herein, the Court finds that the motion to recuse should be granted as to AUSA Cogar and his support staff.

**MOTION TO SEAL**

The United States moved that the recusal documents and communications be filed under seal and viewed *ex parte* and *in camera*.   It contends that the documents are protected by attorney-

client privilege, attorney work product privilege, and the deliberative process privilege.   The Court finds that the documents consist of privileged communications and that these communications between the U.S. Attorney's Office for the Northern District of West Virginia and the Executive Office for U.S. Attorneys General Counsel's Office should properly be maintained under seal and viewed *ex parte*.   *See generally, Aaron v. United States Dep't of Just.*, No. CV 09-00831 (HHK), 2011 WL 13253641 (D.D.C. July 15, 2011).    To the extent that they are relevant to the Court's consideration of the motion to recuse, the Court will include a summary of their content herein, thereby ensuring that both the Defendants and the public have access to the relevant information.

## FACTS[1]

The United States brought this case in a thirteen count *Indictment* (Document 1) returned on August 23, 2022.   The Indictment names David Gerald Minkkinen and Sivaraman Sambasivam as Defendants.   It alleges generally that, until 2013, Mr. Minkkinen and Mr. Sambasivam were employed at Deloitte & Touche, LLP, where they were involved with the Unemployment Insurance practice.   "Deloitte uses a proprietary web-based software platform named Unemployment Framework for Automated Claim & Tax Services ("uFACTS") to process unemployment insurance claims for state agencies."   (Indictment at ¶ 1.)   Mr. Minkkinen and Mr. Sambasivam left Deloitte to work for Sagitec Solutions, LLC, where they were both senior partners with Sagitec's Unemployment Insurance practice.   In 2015, Sagitec won a bid to design, develop, and implement an unemployment insurance software system for the states of Maryland

---

[1] The facts recounted herein are not disputed, and the Court finds that a hearing is unnecessary to assist in developing the factual record for purpose of this motion.

and West Virginia, funded by the United States Department of Labor.   The indictment alleges that they, and others, conspired to convert Deloitte's trade secrets related to its uFacts system for use by, and benefit of, Sagitec.   The charges include conspiring in the theft of trade secrets, aiding and abetting the theft of trade secrets, wire fraud, and false statements.[2]

Although the Indictment was returned in this District, the investigation began in the Northern District of West Virginia.   James Powers, an investigator for the West Virginia Commission on Special Investigations, received a whistleblower complaint claiming that Sagitec may have stolen intellectual property and engaged in other wrongdoing in relation to its contract with Workforce West Virginia.   Mr. Powers informed AUSA Andrew Cogar of the investigation in the summer of 2016 and kept him informed as he investigated further.   Mr. Cogar formally opened the investigation with the United States Attorney's Office for the Northern District of West Virginia on February 3, 2017.

William Ihlenfeld is the current United States Attorney for the Northern District of West Virginia.   His nomination was confirmed on October 5, 2021.   He previously served in the same role until December 2016, but the United States indicates he was not informed of the investigation into Sagitec prior to leaving office.[3]   After leaving the U.S. Attorney's office, he joined the law firm of Bowles Rice, LLP.   Sagitec was one of Mr. Ihlenfeld's clients at Bowles Rice.   He participated in an extensive internal investigation by Sagitec in 2019 and 2020 related to the trade

---

2 Many of the counts are against the Defendants individually.   For purpose of this joint motion, the Court will address the collective charges and evidence.

3 A motion to suppress currently pending before the Court alleges improprieties related to the whistleblower/confidential informant who began communicating with the investigator prior to Mr. Ihlenfeld leaving the U.S. Attorney's Office.   While the Court presumes that Mr. Ihlenfeld was not informed of the investigation and was thus unaware of the conflict when he represented Sagitec, the fact that the investigation began while he was still U.S. Attorney, continued to operate out of the Northern District while he entered private practice and represented Sagitec, and proceeded to an indictment in the Southern District after he was re-appointed as U.S. Attorney for the Northern District contributes to the appearance of a substantial conflict.

secrets claims that form the basis of the indictment.   He interviewed witnesses, including the Defendants, on the same topics at issue in this criminal case.   Mr. Minkkinen and Mr. Sambasivam were both interviewed by federal agents during the period in which Mr. Ihlenfeld represented Sagitec, and those interviews form the basis of false statement charges alleged against them.   Mr. Sambasivam spoke with Mr. Ihlenfeld in preparation for his interview.   Mr. Ihlenfeld negotiated with the United States Attorney's Office for the Northern District of West Virginia on behalf of Sagitec, which has not been charged.

Mr. Ihlenfeld was also part of a team that produced an internal investigative report related to these allegations prior to the Defendants being charged.   Sagitec provided that report to the United States.   The report documents certain materials that the Defendants and other employees used during their employment with Sagitec that may have originated with Deloitte.   However, it concluded that the materials used did not constitute trade secrets and that no trade secrets were stolen from Deloitte.   The internal investigation did not find that any Deloitte source code was removed from Deloitte or copied.   Based on his role in authoring the internal investigative report and interviewing the Defendants, as well as other witnesses, the Defendants indicate that he is likely to be called as a witness at trial.

In addition to his representation of Sagitec, Mr. Ihlenfeld was a member of the West Virginia Legislature.   He served on a Commission that oversaw the West Virginia Commission on Special Investigations (CSI) beginning in January 2021, while Mr. Powers was investigating this matter.

After Mr. Ihlenfeld returned as United States Attorney for the Northern District of West Virginia in 2021, the office submitted a list of matters in which he had potential conflicts to the

Executive Office for U.S. Attorneys General Counsel's Office.   The Northern District explained that Mr. Ihlenfeld had represented Sagitec on the same criminal matter that was approaching indictment in the Northern District and that it was a lengthy and complex investigation.   The Executive Office explained that General Counsel's Office precedent called for recusal of the entire United States Attorney's Office where a newly appointed United States Attorney represented a defendant in the same matter, and concluded that recusal of the entire office, with carve-outs, would be appropriate.   On December 23, 2021, an attorney with the General Counsel's Office for the Executive Office of United States Attorneys issued a memo explaining that the Associate Deputy Attorney General approved recusal of the entire United States Attorney's Office for the Northern District of West Virginia from the Sagitec matter and related matters and assigned the matter to the United States Attorney's Office for the Southern District of West Virginia.   The memo also authorized Supervisory AUSA Andrew Cogar and his support staff to continue working on the matter under the direction and supervision of the Southern District of West Virginia, at the discretion of the United States Attorney for the Southern District of West Virginia.

Mr. Cogar signed the indictment and appears to be lead counsel in this matter, although Candina Heath, Senior Counsel for the Computer Crimes and Intellectual Property Section at DOJ, and Jonathon Storage, an AUSA with the Southern District of West Virginia, are also assigned to the case and have signed some filings or made appearances at hearings.[4]   Mr. Cogar was appointed as a Special Assistant United States Attorney for the Southern District of West Virginia for purposes of this case.   He otherwise remains employed by the Northern District of West

---

[4] In addition, John Frail, an AUSA and Chief of the Criminal Division in the Southern District, with extensive experience, has entered an appearance on behalf of the United States, although he has not, to the Court's knowledge, signed filings or appeared at hearings.

Virginia, where Mr. Ihlenfeld remains ultimately responsible for his supervision and employment status, including raises, promotions, and discipline.

## DISCUSSION

The Defendants argue that the continued involvement of Mr. Cogar and his staff in this prosecution creates at least an appearance of impropriety and conflict.   They cite 28 U.S.C. § 528 and its implementing regulation, 28 C.F.R. § 45.2, contending that "AUSA Cogar has a personal relationship—employee/employer—with a person—Mr. Ihlenfeld—who is substantially involved in the conduct that is the subject of this prosecution."   (Def.s' Mot. at 9–10.)   They point out that Mr. Cogar, while supervised by the Southern District in this case, remains employed by the Northern District, where Mr. Ihlenfeld has significant influence over his career.   The Defendants suggest that Mr. Cogar will "be forced to impeach or impugn the credibility of his own boss, Mr. Ihlenfeld, whose testimony (if truthful) will help exculpate Mr. Minkkinen and Mr. Sambasivam." (*Id.* at 12.)   They note that Mr. Cogar has a duty to explore whether Mr. Ihlenfeld possesses *Brady* information.   They argue that Mr. Ihlenfeld's testimony is central to key issues in the case, and the conflict cannot be resolved without Mr. Cogar's recusal.   The Defendants further argue that CSI Deputy Powers should be recused because Mr. Ihlenfeld was a Commissioner responsible for oversight of CSI investigations, including Mr. Powers' Sagitec investigation, while he was also representing Sagitec.

The United States emphasizes that motions to disqualify are disfavored, particularly disqualification of an entire U.S. Attorney's Office.   It argues that Mr. Cogar does not have a conflict of interest, noting that conflicts of government attorneys cannot be imputed to other attorneys in the office.   The United States indicates that it intends to call another attorney involved

in Sagitec's internal investigation rather than Mr. Ihlenfeld.   It contends that it is not required to explore any exculpatory evidence Mr. Ihlenfeld may possess as a result of his representation of Sagitec, and Mr. Ihlenfeld's confidentiality obligations would preclude sharing such information.[5] It notes that the Defendants appealed to DOJ to recuse AUSA Cogar, and DOJ declined to do so. The United States argues that previous cases recusing attorneys are distinguishable.   It further argues that there is no legal authority for recusing Mr. Powers as the case agent.   Finally, the United States argues that the Defendants cannot show that AUSA Cogar's continued involvement in the case prejudices them.

"Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."   *Wheat v. United States*, 486 U.S. 153, 160 (1988).   "[T]his need to investigate potential conflicts arises in part from the legitimate wish of district courts that their judgments remain intact on appeal."   *Id.* at 161.   In discussing the "requirement of a disinterested prosecutor," the Supreme Court explained that "[i]t is a fundamental premise of our society that the state wield its formidable criminal enforcement powers in a rigorously disinterested fashion, for liberty itself may be at stake in such matters."   *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 808–10 (1987).   The Supreme Court has also discussed the role of a prosecutor:

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer.

---

5 The United States describes Sagitec as "the target of a federal criminal investigation."   (Resp. at 8.)   It is not clear to the Court whether Sagitec has entered into any agreement to cooperate with the United States.

*Berger v. United States,* 295 U.S. 78, 88 (1935).   As such, "prosecutors have a responsibility to seek justice, not merely to convict."   *United States v. Farrell*, 115 F. Supp. 3d 746, 752 (S.D.W. Va. 2015) (Johnston, J.).

This district has previously addressed cases in which defendants requested recusal of some or all members of the United States Attorney's Office.   In *United States v. Farrell*, Judge Johnston found that the fact that attorneys in the office, including leadership, were impacted by a chemical spill that contaminated water systems in and around Charleston, West Virginia, and could benefit from related civil class actions, did not require recusal from a criminal case charging the defendants with negligent discharge and related offenses.   115 F. Supp. 3d 746 (S.D. Va. 2015) (Johnston, J.)   There, the Court reasoned that any financial interest was "too remote, insubstantial, and speculative to present a significant risk that the prosecutor's judgment would be distorted by the prospect of private gain."   *Id.* at 756–57.   In *United States v. Dyess*, then-Chief Judge Haden disqualified the entire United States Attorney's Office for the Southern District of West Virginia where one or more AUSAs were potential witnesses who might be required to testify related to misconduct by law enforcement officers in a criminal investigation and prosecution, including case agents who worked closely with the AUSAs.   231 F. Supp. 2d 493 (S.D. W. Va. 2002).   The Court explained as follows:

> The unique nature of the U.S. Attorney's representation highlights a second, and potentially greater problem this office faces in its continued prosecution of these Defendants. Unquestionably, testimony from the police officers, who are agents of the United States, and possible testimony from Schwartz and other AUSAs or office employees is potentially prejudicial both to the reputation of their office and that of the Government. In this regard, the interest of the U.S. Attorney's Office and that of the sovereign government may not be aligned because revelation of wrongdoing, which may

8

> be required in the service of truth and justice to these defendants,
> cannot help but cause reputational injury to the office.

*Id.* at 497.   Another court in the Fourth Circuit summarized the holding of *Dyess*: "The possibility of one United States Attorney having to testify in that case required the recusal of the entire office because of the potential for the appearance of impropriety."   *United States v. Wagoner*, No. 4:20-CR-00018, 2022 WL 1117715, at *4 (W.D. Va. Apr. 14, 2022).

Other circuits have also addressed disqualification motions.   As the United States emphasizes, disqualification, and particularly disqualification of an entire United States Attorney's Office, is disfavored.   *United States v. Bolden*, 353 F.3d 870, 875–76 (10th Cir. 2003).   In addition, a "predominant theme…is that disqualification is required when screening devices were not employed or were not timely employed."   *United States v. Goot*, 894 F.2d 231, 235 (7th Cir. 1990).   "Disqualification of an entire USAO is required only when screening devices, aimed at ensuring side-switching counsel is in no way involved in the case giving rise to the conflict, were not used or were ineffective."   *United States v. Shah*, 43 F.4th 356, 363 (3d Cir. 2022), *cert. denied*, 214 L. Ed. 2d 357, 143 S. Ct. 605 (2023).

There is no dispute here that United States Attorney Ihlenfeld's prior representation of Sagitec during this criminal investigation creates a substantial conflict of interest.   The Associate Deputy Attorney General reviewed the conflict and directed that the United States Attorney's Office for the Northern District of West Virginia be recused from this matter but permitted AUSA Cogar and his support staff to continue working on the case under the supervision of, and at the discretion of, the United States Attorney's Office for the Southern District of West Virginia after the case was assigned to that office.   The documents from the Executive Office for U.S. Attorneys General Counsel's Office do not explain the reasoning or basis for permitting a carve-out for

AUSA Cogar.   Recusing an office as a whole but allowing an attorney who remains employed by that office, whose promotions, commendations, job duties, and other conditions of employment remain largely at the discretion of the conflicted U.S. Attorney, to continue acting as lead counsel, creates an appearance of impropriety.   When the DOJ has concluded that a United States Attorney's previous representation of a target in a criminal investigation warrants recusal of the entire district office, allowing the attorney most involved in the case to remain lead counsel as the case is prosecuted in another district, might reasonably cause the public to view the recusal as mere window-dressing.

The procedural history of the recusal also sets this case apart from those cases cited by the United States for the proposition that recusal of an entire United States Attorney's Office is disfavored.   The Defendants do not ask this Court to recuse an entire United States Attorney's Office.   The Department of Justice already did so.   The indictment was brought in the Southern District of West Virginia, and the Defendants do not seek recusal of the United States Attorney's Office for the Southern District of West Virginia, or any attorney within that office other than Mr. Cogar as a Special Assistant United States Attorney.

More substantially, the communications between the Northern District and the Executive Office regarding the recusal do not identify Mr. Ihlenfeld as a potential witness.   An attorney who previously represented a party may be effectively screened, such that no knowledge or information gained during the representation is transferred to attorneys working on the case.   As the Executive Office concluded, there may remain an appearance of impropriety when the attorney with a conflict is the leader of the office.   Mr. Ihlenfeld's representation of Sagitec, however, included an internal investigation with interviews of various witnesses and review of relevant material that resulted in

10

production of an internal report.   That report has been provided to the United States.   It concludes that the investigators were unable to find source code taken from Deloitte, and that no materials taken from Deloitte constitute trade secrets.   Whether Sagitec, and specifically these Defendants, obtained and used Deloitte's source code, and whether any materials these Defendants obtained that originated with Deloitte constitute trade secrets are central issues in this case.   Counsel for both the United States and the Defendants will need to explore those issues with Mr. Ihlenfeld both before and during trial.   The screening methods that may prevent one attorney's conflict from impacting others in the office are, of course, impossible when the conflicted attorney is a potential witness.

Permitting an attorney employed by the United States Attorney's Office for the Northern District of West Virginia to remain as prosecutor in a case where the United States Attorney for the Northern District is a potential exculpatory witness creates a conflict of interest and could risk a mistrial.   Given his role of seeking justice, Mr. Cogar's ability to fairly evaluate evidence from his boss could reasonably be questioned.   The public could reasonably, and likely would, question Mr. Ihlenfeld's credibility if called as a witness by the Defendants simply because his employee, AUSA Cogar, is the lead prosecutor on the other side of counsel table.   In fact, the "carve out", itself, would likely be questioned.[6]   At the very least, Mr. Cogar's role, under the circumstances presented, threatens the Court's ability to ensure that these "legal proceedings appear fair to all who observe them." *Wheat v. United States*, 486 U.S. 153, 160 (1988).   Therefore, the Court finds that the motion to recuse Mr. Cogar should be granted.

---

6 To be clear, the Court does not question Mr. Cogar or Mr. Ihlenfeld's ethical compliance but is concerned with the appearance of impropriety and the Court's obligation to "insure that the proceedings appear fair to all who observe them".

The Defendants also request that the case agent be recused because Mr. Ihlenfeld was on a Commission charged with oversight of his agency during some portion of the investigation.   Case agents are in a different position than attorneys or prosecutors appearing before the court.   Law enforcement officers do not share the same strict ethical standards regarding conflicts of interest. Mr. Powers presumably will appear at trial as a witness, and the Defendants have cited no authority that would permit the Court to disqualify a witness based on an asserted conflict of interest of this nature.   Therefore, the motion to recuse should be denied as to Mr. Powers.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendants David Gerald Minkkinen's and Sivaraman Sambasivam's Motion to Recuse* (Document 146) be **GRANTED** to the extent it seeks recusal of AUSA Andrew Cogar and **DENIED** to the extent it seeks recusal of the case agent.   In addition, the Court **ORDERS** that the *Government's Ex Parte Motion to Seal and Review Recusal Documents Ex Parte & In Camera* (Document 163) be **GRANTED** and that Document 163 and the exhibits attached thereto remain **SEALED**.

Lastly, pending before the Court are two motions, namely, *Defendant Sivaraman Sambasivam's And David Gerald Minkkinen's Joint Motion To Dismiss The Indictment Due To The Government's Pre-Indictment Delay* (Document 149) and *Defendant Sivaraman Sambasivam's Motion To Sever Trial From Co-Defendant David Minkkinen* (Document 148), to which AUSA Cogar apparently signed the United States' responsive pleadings (Documents 159 and 160).   The Court **ORDERS** that the United States notify the Court in writing, within seven

(7) days of the entry of this Order, whether it intends to rely on these documents, given AUSA Cogar's recusal.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendants and their respective counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:    May 22, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

13