UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON GRAND JURY 2021
MAY 31, 2023 SESSION



FILED
MAY 3 1 2023

UNITED STATES OF AMERICA

v.

DAVID GERALD MINKKINEN and
SIVARAMAN SAMBASIVAM

CRIMINAL NO. <u>2:22-cr-00163</u>
18 U.S.C. § 1832(a)(5)
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1001(a)(2)
18 U.S.C. § 2

S U P E R S E D I N G
I N D I C T M E N T

The Grand Jury charges that:

## INTRODUCTION

At all times relevant to this indictment:

1.      Deloitte was an international company that provided various financial and advisory services, including unemployment claims management services. Deloitte owned and marketed a proprietary web-based software platform named Unemployment Framework for Automated Claim & Tax Services ("uFACTS") to process unemployment insurance claims for state agencies. The uFACTS source code, database, data tables, use cases, software designs, business rules, schema, logic, artifacts, and architecture constituted Deloitte intellectual property.

2.      As of July 2013, the states of Minnesota, New Mexico, and Massachusetts, had implemented uFACTS.

3.      Sagitec Solutions, LLC ("Sagitec") was a global "technology solutions" company founded in 2004 and headquartered in Saint Paul, Minnesota. Sagitec provided a variety of information technology products to private and public institutions.

1

4.      In or about July 2013, Sagitec launched its Unemployment Insurance ("UI")
practice.

5.      Between in or about June 2013, to in or about December 2015, at least eleven
Deloitte employees left Deloitte to work for Sagitec, including defendants **DAVID GERALD
MINKKINEN** and **SIVARAMAN SAMBASIVAM**. Defendant **DAVID GERALD
MINKKINEN** joined Sagitec in or about July 2013 as a senior partner at Sagitec to oversee its UI
practice and defendant **SIVARAMAN SAMBASIVAM** joined Sagitec in or about September
2013 as a senior partner at Sagitec to oversee client service delivery for its UI practice.

6.      Before joining Sagitec, defendant **DAVID GERALD MINKKINEN** was the UI
Practice Leader at Deloitte from in or about May 2009 to in or about June 2013, and defendant
**SIVARAMAN SAMBASIVAM** was employed by Deloitte from April 2009 until September
2013, serving as the lead system architect for the uFACTS Solution Framework.

7.      Deloitte's employment contracts with defendants **DAVID GERALD
MINKKINEN** and **SIVARAMAN SAMBASIVAM**, and with other former Deloitte employees,
established that any information, materials, and records prepared by or for Deloitte or used in
connection with Deloitte's operations were the proprietary property of Deloitte and must remain
confidential. In each of their contracts, defendants **DAVID GERALD MINKKINEN** and
**SIVARAMAN SAMBASIVAM** both promised that they would not disclose any Deloitte
proprietary property to third parties, nor would they remove or retain such property after leaving
Deloitte's employment.

8.      On or about June 20, 2013, before leaving his employment at Deloitte, defendant
**DAVID GERALD MINKKINEN** received by email a Deloitte Partner/Principal resignation
checklist, which contained sections entitled "Your Obligation to Return Computer and Software

2

Equipment" and "Your Obligation to Return Client Work Papers Belonging to the Deloitte U.S. Firms and Their Clients." The checklist stated that "[y]ou should not copy client or Deloitte information off your equipment." The checklist also directed that the partner/principal must "[r]eturn all records checked out in your name in the Deloitte Records Management System (DRMS) to Central Files," and that "[a]ll work in progress files (not checked out to you in DRMS) should be returned to Deloitte in accordance with directions you receive from your leadership."

9.      From on or about July 16, 2013, to on or about July 19, 2013, defendant **DAVID GERALD MINKKINEN** and Deloitte employees exchanged emails wherein defendant **DAVID GERALD MINKKINEN** requested files from his Deloitte computer, to include "Outlook PST files, Outlook contacts, Outlook notes, and Outlook calendar." In these emails, defendant **DAVID GERALD MINKKINEN** stated that he understood the admonishment that the files "should only be personal information" and asserted that he "did not request any proprietary information."

*Description of Deloitte Intellectual Property and Examples of Misappropriation*

10.      As described herein, defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** copied, downloaded, obtained, and transmitted numerous Deloitte files, including highly proprietary information such as uFACTS source code, data, and use cases, without authorization and in violation of their Deloitte employment contracts. These files were subsequently used by numerous Sagitec employees to design, develop, and market Sagitec's UI software, known as "Neosurance." The events described in paragraphs 11 through 20, 22 through 25, 30 and 31 below are representative examples of this activity.

11.      On or about July 18, 2013, defendant **DAVID GERALD MINKKINEN** sent an email to a Sagitec employee, attaching a 37-page executive summary from a Deloitte response to a UI request for proposal ("RFP").

12.     On or about July 29, 2013, defendant **DAVID GERALD MINKKINEN** emailed a Deloitte marketing brochure to Sagitec employees, stating that "I took one of our existing collateral pieces and customized."

13.     On or about August 16, 2013, defendant **DAVID GERALD MINKKINEN** sent emails to defendant **SIVARAMAN SAMBASIVAM,** who was still employed by Deloitte, and a Sagitec employee, attaching Deloitte PowerPoint presentations with the file names "WI UI Fraud Analytics Findings 20130617 v5.pptx" and "MN UI Fraud Detection - June Meeting with Jim - v7.pptx" and stating that those documents were final deliverables for Wisconsin and Minnesota.

14.     On or about August 19, 2013, while still employed at Deloitte, defendant **SIVARAMAN SAMBASIVAM** emailed an internet link and login information to a Sagitec employee for Deloitte's ongoing UI project in Massachusetts.

15.     On or about August 20, 2013, defendant **DAVID GERALD MINKKINEN** provided a collection of uFACTS program design documents known as "use cases" from Deloitte's UI project in Massachusetts to a Sagitec employee to facilitate the development of the Neosurance product.

16.     On or about August 20, 2013, a Sagitec employee sent an email with the subject "uFACTS artifacts" to defendant **DAVID GERALD MINKKINEN**, defendant **SIVARAMAN SAMBASIVAM**, who was still employed at Deloitte, and another Sagitec employee, stating that he "added the captivate videos that [they] discussed today morning and uFACTS ERD/DDL's to the below SharePoint site. Going forward, [he'll] keep adding additional artifacts to this site[:] http://sagitecportal/Unemployment%20Insurance/uFACTS/Forms/AllItems.aspx." "ERD" meant an "Entity Relationship Diagram," which was a graphical representation of relationships among concepts or events within an information technology (IT) system that assists in defining business

4

processes. "DDL" means "Data Definition Language," which was used in software to describe data and its relationships in a database.

17.    On or about August 22, 2013, a Sagitec employee sent an email to defendant **SIVARAMAN SAMBASIVAM** with the subject line "uFACTS tables needed for development" and an attached spreadsheet. The Sagitec employee wrote, "Attached is the spreadsheet that has all the uFACTS tables that were contained in the DDL's you sent earlier."

18.    On or about August 26, 2013, defendant **SIVARAMAN SAMBASIVAM**, while still employed at Deloitte, copied the uFACTS Oracle database and later made it available to Sagitec employees to facilitate the development of Neosurance.

19.    On August 29, 2013, a Sagitec employee sent an email with the subject line "ufACTS code base and all use cases" to two other Sagitec employees and defendant **SIVARAMAN SAMBASIVAM**, who was still employed with Deloitte. The email stated that "[t]he uFACTS code base from Massachusetts project and all use cases are available at" a specified link located hosted on a Sagitec server in India. Later that day, defendant **SIVARAMAN SAMBASIVAM** responded in the email dialogue, stating "[p]lease talk to Deepak before you copy this to other locations."

20.    On September 2, 2013, a Sagitec employee sent an email to defendant **SIVARAMAN SAMBASIVAM**, inquiring about "uFACTS data." In a response later that day, defendant **SIVARAMAN SAMBASIVAM**, while still employed with Deloitte, wrote that "[w]e might have to import the data into a database instance from MN and then [another Sagitec employee] can extract to load into tables with new scheme there."

21.    Defendant **SIVARAMAN SAMBASIVAM** ended his employment with Deloitte on or about September 20, 2013, and officially started his employment with Sagitec as a senior partner on or about September 23, 2013.

22.    On October 15, 2013, defendant **DAVID GERALD MINKKINEN** emailed defendant **SIVARAMAN SAMBASIVAM** a 227-page document prominently labeled "CONFIDENTIAL" on the cover page and "Deloitte Consulting LLP / Confidential – Trade Secret" at the footer on the introductory pages. The document, entitled "uFACTS Solution Framework," contained a comprehensive explanation of the uFACTS software platform's functionality. In the email, defendant **DAVID GERALD MINKKINEN** also wrote "Siva – you could also use this for benefit charges, and other enhancements we need."

23.    On February 5, 2014, in an email chat dialogue, defendant **DAVID GERALD MINKKINEN** directed a Sagitec employee to "check how uFACTS coded" a particular software function.

24.    On October 29, 2014, a Sagitec employee sent an email to other Sagitec employees, copying defendant **DAVID GERALD MINKKINEN** and defendant **SIVARAMAN SAMBASIVAM**, with the subject line "Collection use cases from ufacts." The email stated, "Has all the use cases from MA and uFACTS, Correspondence specs, reports, etc. that I could find." Attached to the email was a file named "Collection -use cases.rar," which contained more than 600 pages of use cases from Deloitte's project in Massachusetts. Defendant **DAVID GERALD MINKKINEN** responded to the email, asking two Sagitec employees to "analyze this and determine what is feasible for the demonstration."

25.    On April 13, 2015, defendant **DAVID GERALD MINKKINEN** sent an email to defendant **SIVARAMAN SAMBASIVAM** with the subject "WYCAN pricing," which attached

a spreadsheet entitled "Deloitte Consulting Project Pricing Model" that Deloitte used to determine whether and how to bid on unemployment insurance projects.

*The Maryland-West Virginia Consortium Unemployment Insurance Project*

26.    In or about 2015, and based on its proposal, Sagitec was awarded a contract to design, develop, and implement a replacement software system to process UI benefit claims, taxes, and appeals in the states of Maryland and West Virginia. The project was funded by federal grants from the United States Department of Labor.

27.    The Maryland-West Virginia Consortium ("Consortium") contract with Sagitec provided, in pertinent part, that Sagitec "represent[ed], warrant[ed], and covenant[ed]" that its "Work Product, the Software, and the System shall not infringe or otherwise violate any intellectual property or other proprietary rights of a third party." On or about August 27, 2015, **DAVID GERALD MINKKINEN** signed the contract on behalf of Sagitec, and served as the primary point of contact for the project. The Consortium contract indicated that Sagitec would be paid between $49,195,338 and $70,631,145 for its services. To date, more than $100 million has been expended on the project.

28.    Workforce West Virginia ("Workforce WV") was a state government agency funded through the United States Department of Labor that oversaw the state unemployment insurance program and a network of workforce development services. Workforce WV was the state's implementing agency for Sagitec's UI product and thus worked with Sagitec and other subcontractors to develop and install the new UI software platform. Workforce WV employees worked on the UI project in offices in Charleston, Kanawha County, West Virginia; Clarksburg, Harrison County, West Virginia; and Morgantown, Monongalia County, West Virginia, among other locations in West Virginia, where they often remotely collaborated with Sagitec employees

in Maryland and elsewhere.

29.     Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** continued to possess, distribute, and use Deloitte intellectual property without authorization after Sagitec began work on the Consortium project in October 2015.

30.     On or about June 10, 2016, defendant **SIVARAMAN SAMBASIVAM** emailed a file entitled "SIDES.zip" to defendant **DAVID GERALD MINKKINEN** and other Sagitec employees, writing "The attached file has a bunch of documents. Please review them and use them as needed." The SIDES.zip file exclusively contained documents and files produced for Deloitte's UI projects in Massachusetts and New Mexico.

31.     On or about July 23, 2016, defendant **SIVARAMAN SAMBASIVAM** emailed a file entitled "Performance Testing.zip" to a Sagitec employee, writing that "the set of documents I am sending now should give a very good start for finalizing the scenarios for both batch and online with the expected performance numbers." The Performance Testing.zip exclusively contained files from Deloitte's UI project in Massachusetts.

*Maryland's Investigation of Sagitec's Product*

32.     Starting in 2016, multiple Workforce WV employees working in Charleston, Kanawha County, West Virginia, noticed suspicious references to Massachusetts, New Mexico, and Deloitte in Sagitec project materials. In May 2016, a Workforce WV employee made contact with an agent with the West Virginia Commission on Special Investigations, alleging possible wrongdoing by Sagitec, to include the misappropriation of Deloitte intellectual property.

33.     On or about July 25, 2016, after learning about the Workforce WV employee whistleblower complaint relating to the alleged theft of Deloitte intellectual property, a Maryland Assistant Attorney General ("MD AAG") sent a letter to defendant **DAVID GERALD**

**MINKKINEN**, which relayed the whistleblower's concerns at the time. In part, the attachment to the letter specifically expressed the concern that "[t]here are many references to the State of Massachusetts in the documentation used and provided by Sagitec."

34.     Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** both contributed to drafting a response to the July 25, 2016 letter from the MD AAG. In the August 23, 2016 responsive letter signed by defendant **DAVID GERALD MINKKINEN**, the defendants did not divulge their extensive and then-recent use of Deloitte intellectual property from its Massachusetts project. Instead, the defendants provided a misleading response that "[i]n some of our documentation, there may be references to our experience from other states as we use these examples to discuss potential implementation options at the MWC states [Maryland and West Virginia]."

35.     On or about December 7, 2016, the MD AAG sent a follow-up letter to defendant **DAVID GERALD MINKKINEN**, which attached a document with twenty-three (23) additional questions relating to Sagitec's "ownership of the framework being used to develop the Consortium project." In part, these questions asked whether former Deloitte employees who were now employed at Sagitec, including defendant **DAVID GERALD MINKKINEN** and defendant **SIVARAMAN SAMBASIVAM**, "retain[ed]" or "obtain[ed]" "any software, source code, data tables, data structures, data dictionaries, documentation, deliverables, or other works of authorship authored by Deloitte, a Deloitte subcontractor or consultant, or a Deloitte client," or "incorporated" any of those items "into anything delivered to the MW Consortium."

36.     Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** both contributed to drafting a response to the December 7, 2016 letter from MD AAG Carter. On or about January 15, 2017, defendant **DAVID GERALD MINKKINEN** sent an

9

email to MD AAG Carter with an attached responsive letter signed by defendant **DAVID GERALD MINKKINEN**, wherein both defendants falsely denied that they or any other Sagitec personnel ever "retain[ed]" or "obtain[ed]" "any software, source code, data tables, data structures, data dictionaries, documentation, deliverables, or other works of authorship authored by Deloitte, a Deloitte subcontractor or consultant, or a Deloitte client," or "incorporated" any of those items "into anything delivered to the MW Consortium." The materially false assurances in the defendants' responsive letter caused the Maryland Office of the Attorney General to close its inquiry as of January 25, 2017.

37.    After the closure of the Maryland investigation, on or about April 12, 2017, defendant **DAVID GERALD MINKKINEN** sent an email with the subject "SLIM" to defendant **SIVARAMAN SAMBASIVAM** and other Sagitec employees, attaching a file named "QUEST_Pre_Implementation_Assessment_10_13_09_Final.doc," which was produced by Deloitte for its Massachusetts UI project. In the email, defendant **DAVID GERALD MINKKINEN** stated, "I want to raise the priority of completing the SLIM analysis. . . . I am attaching the report we created for MA. I would like a similar report created for both projects."

*Deloitte Allegations of Intellectual Property Theft*

38.    On or about October 3, 2016, legal counsel for Deloitte notified Sagitec by letter that Deloitte had reason to believe that Sagitec had misappropriated and was improperly using Deloitte intellectual property associated with its unemployment insurance product. In an October 7, 2016 response letter signed by Sagitec counsel, Sagitec denied those claims as "baseless."

39.    On or about November 10, 2016, defendant **DAVID GERALD MINKKINEN** met with officials from Maryland's Department of Labor, Licensing, and Regulation in Baltimore, Maryland. Officials with Workforce WV participated in the meeting by telephone in Charleston,

Kanawha County, West Virginia. The purpose of the meeting was to discuss the allegations relating to Sagitec's source code development for the Consortium, especially in light of Deloitte's cease and desist letter and an inquiry by an investigator in West Virginia. During the meeting, defendant **DAVID GERALD MINKKINEN** made false and misleading assurances to the state officials attending in person and by telephone, stating, among other things, that no source code was taken from Deloitte's Massachusetts project.

40.    After learning of the criminal investigation in the matter, defendant **DAVID GERALD MINKKINEN** sent an email on or about September 14, 2017, to investigators in Charleston, Kanawha County, West Virginia and Virginia, seeking to quell the investigation and directing agents to "refrain from contacting" certain Sagitec employees. Attached to the email were the defendants' August 23, 2016 and January 15, 2017 responsive letters to MD AAG Carter signed by defendant **DAVID GERALD MINKKINEN**, reasserting their material misrepresentation and continuing to falsely deny any possession or misappropriation of Deloitte intellectual property.

41.    Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** subsequently continued to falsely deny ever possessing or using Deloitte intellectual property. Deloitte sent a follow-up letter dated September 12, 2018, demanding that Sagitec cease and desist from using Deloitte intellectual property. Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** assisted with drafting a response, which again falsely stated that they and the other former Deloitte employees who were now Sagitec employees "did not obtain Deloitte proprietary materials including work product, source code, methodologies, tools, and documentation for the purposes of developing the Neosurance solution." On or about September 27, 2018, Sagitec counsel, relying on representations made by the

11

defendants, emailed Deloitte a responsive letter falsely stating that Sagitec "does not possess any Deloitte LLP intellectual property."

## COUNT ONE

42.    Paragraphs one through forty-one are incorporated herein by reference as if repeated and re-alleged in full.

43.    From in or about July 2013 to in or about June 2021, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant **DAVID GERALD MINKKINEN** and defendant **SIVARAMAN SAMBASIVAM**, together with persons known and unknown to the Grand Jury, with intent to convert a trade secret that was related to a product and service used in and intended for use in interstate and foreign commerce, to the economic benefit of anyone other than the owner thereof, and intending and knowing that the offense will injure any owner of that trade secret, did knowingly and willfully conspire and agree to steal trade secret information belonging to Deloitte, that is:

a.    stole, and without authorization appropriated, took, carried away, and concealed, and by fraud, artifice, and deception obtained such information;

b.    without authorization copied, duplicated, sketched, drew, photographed, downloaded, uploaded, altered, destroyed, photocopied, replicated, transmitted, delivered, sent, mailed, communicated, and conveyed such information; and

c.    received and possessed such information, knowing the same to have been stolen and appropriated, obtained, and converted without authorization.

44.    Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** knew and firmly believed that Deloitte considered the uFACTS source code, database, use cases, software designs, schema, logic, artifacts, and architecture to be trade secret information.

45.    Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** knew and firmly believed that Deloitte took reasonable steps to maintain the secrecy of its trade secret information, along with other associated confidential and proprietary information.

46.    In addition, defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** knew and firmly believed that the Deloitte trade secret information and the Deloitte confidential and proprietary information derived independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public.

47.    In furtherance of the conspiracy, and to accomplish its objectives, defendant **DAVID GERALD MINKKINEN**, defendant **SIVARAMAN SAMBASIVAM**, together with persons both known and unknown to the Grand Jury, committed the following overt acts, among others, in the Southern District of West Virginia and elsewhere:

a.    From approximately January 2016 until at least on or about April 8, 2019, caused the transmission of material containing and derived from Deloitte trade secret information to computers and servers located in Charleston, Kanawha County, West Virginia, belonging to Workforce WV.

b.    From approximately January 2016 until at least on or about April 8, 2019, uploaded and conveyed material containing and derived from Deloitte trade secret information to a Microsoft SharePoint server, knowing and intending that the material would be accessed and downloaded to computers and servers located in Charleston, Kanawha County, West Virginia, belonging to Workforce WV.

c.    On or about September 14, 2017, defendant **DAVID GERALD MINKKINEN** sent an email to investigating agents that was designed to conceal and misrepresent the

ongoing possession, transmission, and use of Deloitte trade secret information by defendant **DAVID GERALD MINKKINEN,** defendant **SIVARAMAN SAMBASIVAM**, Sagitec, and other persons both known and unknown to the Grand Jury.

d.      On or about October 1, 2020, in a recorded interview with an investigating agent in Charleston, Kanawha County, West Virginia, defendant **DAVID GERALD MINKKINEN** made material misrepresentations about Sagitec's acquisition, possession, and use of Deloitte trade secret information.

e.      On or about March 12, 2021, in a recorded interview with an investigating agent in Charleston, Kanawha County, West Virginia, defendant **SIVARAMAN SAMBASIVAM** made material misrepresentations about Sagitec's acquisition, possession, and use of Deloitte trade secret information.

In violation of Title 18, United States Code, Section 1832(a)(5).

## COUNT TWO

48.    Paragraphs one through forty-one and fifty-seven through sixty-one are incorporated herein by reference as if repeated and re-alleged in full.

49.    From in or about July 2013 to in or about June 2021, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendant **DAVID GERALD MINKKINEN** and defendant **SIVARAMAN SAMBASIVAM** knowingly conspired and agreed together and with other persons both known and unknown to the Grand Jury, to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce, any writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice in violation of 18 U.S.C. § 1343.

*Object of the Conspiracy*

50.    The object of the conspiracy was for defendants DAVID GERALD MINKKINEN and SIVARAMAN SAMBASIVAM and others, without the knowledge or permission of the Maryland-West Virginia Consortium, Workforce WV, and Deloitte, to use Deloitte intellectual property to facilitate and expedite the development and deliverability of Sagitec's competing Neosurance software for its Unemployment Insurance (UI) practice; to misrepresent and conceal to the Maryland-West Virginia Consortium, Workforce WV, and others, to include Deloitte and other state and federal agencies, that the UI solution offered, developed for and delivered to the Maryland-West Virginia Consortium and Workforce WV contained, consisted of, incorporated and infringed Deloitte intellectual property; and based on the defendants' misrepresentation and omissions, to enable Sagitec to receive and retain funds received for the development and

implementation of Sagitec's UI solution using its Neosurance software in Maryland and West Virginia.

*Manner and Means of the Conspiracy*

51.    Defendant **DAVID GERALD MINKKINEN**, defendant **SIVARAMAN SAMBASIVAM**, together with persons known and unknown to the Grand Jury, obtained and distributed Deloitte intellectual property by means of wire communications in interstate commerce to Sagitec employees without Deloitte's authorization and in violation of their employment contracts with Deloitte.

52.    Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** used and encouraged other Sagitec employees by means of wire communications in interstate commerce to use Deloitte intellectual property to develop and market Sagitec's competing Neosurance product.

53.    Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** made and caused others to make material misrepresentations by means of wire communications in interstate commerce to Deloitte and state and federal government agencies about both defendants' possession and use, as well as Sagitec's possession and use of Deloitte intellectual property.

54.    In furtherance of the conspiracy, defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** made material misrepresentations about their respective possession and use and Sagitec's possession and use of Deloitte intellectual property by means of wire communications in interstate commerce, including their interviews with an investigator in Charleston, Kanawha County, West Virginia on or about October 1, 2020 and March 12, 2021, respectively.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS THREE THROUGH FIVE

55.     Paragraphs one through forty-one are incorporated herein by reference as if repeated and re-alleged in full.

56.     From in or about July 2013 to in or about June 2021, at or near Charleston, Kanawha County, West Virginia, within the Southern District of West Virginia, and elsewhere, defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM,** aided and abetted by each other, devised and intended to devise a scheme and artifice to defraud the Maryland-West Virginia Consortium and Deloitte to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

*The Scheme to Defraud*

It was part of the scheme to defraud that:

57.     Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** obtained, transmitted, and used various forms of Deloitte intellectual property without authorization, including proprietary documents and data associated with uFACTS.

58.     Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** knowingly facilitated and approved the use of Deloitte intellectual property to design, develop, and market Sagitec's UI software product.

59.     In Sagitec's contract with the Consortium, defendant **DAVID GERALD MINKKINEN** falsely affirmed that Sagitec's UI software product would not infringe third party intellectual property rights.

60.     Defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM** thereafter repeatedly concealed and misrepresented Sagitec's possession and use of Deloitte intellectual property.

19

61.    On or about the dates below, for the purpose of executing, and attempting to execute, the scheme to defraud the Maryland-West Virginia Consortium and Deloitte, and for obtaining money and property by false and fraudulent pretenses, defendants **DAVID GERALD MINKKINEN** and **SIVARAMAN SAMBASIVAM**, aided and abetted by each other, transmitted and caused to be transmitted by means of wire communication in interstate commerce the writings, signs, signals, pictures and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | DESCRIPTION OF WIRE |
|-------|------|---------------------|
| Three | September 14, 2017 | Email transmitted by **DAVID GERALD MINKKINEN** from Minnesota to investigators in West Virginia and Virginia |
| Four | October 1, 2020 | Telephonic communication by **DAVID GERALD MINKKINEN** from Minnesota to West Virginia |
| Five | March 12, 2021 | Videoconference interview conducted via the internet between **SIVARAMAN SAMBASIVAM** in Minnesota and investigator in West Virginia |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT SIX

62.     Paragraphs one through forty-one are incorporated herein by reference as if repeated and re-alleged in full.

63.     On or about September 14, 2017, defendant **DAVID GERALD MINKKINEN** sent an unsolicited email to agents of the West Virginia Commission on Special Investigations and United States Department of Labor, Office of Inspector General. In the email, defendant **DAVID GERALD MINKKINEN** claimed, among other things, that "an individual in West Virginia" "made certain unfounded claims regarding Sagitec's software and services," which "were thoroughly vetted with MW consortium project leadership and the Maryland Attorney General."

64.     Defendant **DAVID GERALD MINKKINEN** attached three documents to the September 14, 2017 email: two letters addressed to the Maryland Office of the Attorney General ("OAG") dated August 23, 2016, and January 15, 2017, which were responses to inquiries by the Maryland OAG about alleged misappropriation of Deloitte intellectual property by Sagitec, and a January 25, 2017 letter from the Maryland OAG, which indicated that the inquiry was "closed" based on the information provided by defendant **DAVID GERALD MINKKINEN**.

65.     On or about September 14, 2017, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN** willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating in an email attachment dated August 23, 2016 that "[c]ertainly the allegation that Sagitec has in any way misappropriated another party's property is defamatory." The statement and representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, Sagitec had, in fact, misappropriated Deloitte intellectual property.

21

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT SEVEN

66.     Paragraphs one through forty-one and sixty-three and sixty-four are incorporated herein by reference as if repeated and re-alleged in full.

67.     On or about September 14, 2017, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN** willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating in an email attachment dated January 15, 2017, that former Deloitte employees at Sagitec, including defendant **DAVID GERALD MINKKINEN**, had not "retained any software, source code, or any other tangible artifacts authored by Deloitte, a Deloitte subcontractor or consultant, or a Deloitte client after leaving Deloitte's employment." The statement and representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, he and other former Deloitte employees working for Sagitec had, in fact, retained copies of the Deloitte uFACTS source code and numerous other and software-related data authored by Deloitte.

In violation of Title 18, United States Code, Section 1001(a)(2).

23

## COUNT EIGHT

68.     Paragraphs one through forty-one and sixty-three and sixty-four are incorporated herein by reference as if repeated and re-alleged in full

69.     On or about September 14, 2017, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN** willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating in an email attachment dated January 15, 2017, that Sagitec had not "obtained copies of any software, source code, or any other tangible software artifacts authored by Deloitte, a Deloitte subcontractor or consultant, or a Deloitte client after leaving Deloitte's employment." The statement and representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, Sagitec had, in fact, obtained copies of the Deloitte uFACTS source code and numerous other software-related data authored by Deloitte.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT NINE

70.     Paragraphs one through forty-one are incorporated herein by reference as if repeated and re-alleged in full.

71.     On or about October 1, 2020, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN**, during a recorded interview with a agents of the West Virginia Commission on Special Investigations and United States Department of Labor, Office of Inspector General, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is: when asked whether he brought anything from Deloitte when he came to Sagitec, defendant **DAVID GERALD MINKKINEN** responded "No, and . . . that's entirely false." This representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, he in fact took Deloitte intellectual property with him when he started his employment at Sagitec.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT TEN

72.    Paragraphs one through forty-one are incorporated herein by reference as if repeated and re-alleged in full.

73.    On or about October 1, 2020, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN**, during a recorded interview with agents of the West Virginia Commission on Special Investigations and United States Department of Labor, Office of Inspector General, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating that "I can assure you both that there was nothing of Deloitte technology that was used in [Sagitec's] solution, period." This representation was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, Deloitte technology, including software code and data tables, was used to develop Sagitec's Neosurance product.

In violation of Title 18, United States Code, Section 1001(a)(2).

26

## COUNT ELEVEN

74.    Paragraphs one through forty-one are incorporated herein by reference as if repeated and re-alleged in full.

75.    On or about October 1, 2020, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN**, during a recorded interview with agents of the West Virginia Commission on Special Investigations and United States Department of Labor, Office of Inspector General, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, when asked if he left Deloitte with Deloitte use cases or similar material, defendant **DAVID GERALD MINKKINEN** responded that "No, no, and it wouldn't even be useful. Like if I took the [Deloitte] use case from New Mexico it wouldn't even be useful . . ., because they're, like I said, 30 percent different state by state. . . . [I]t wouldn't even make sense." These statements were false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, he took use cases from a Deloitte project in Massachusetts, transmitted them to Sagitec employees, and knew that they were used to develop Sagitec's Neosurance product.

In violation of Title 18, United States Code, Section 1001(a)(2).

27

## COUNT TWELVE

76.     Paragraphs one through forty-one are incorporated herein by reference as if repeated and re-alleged in full.

77.     On or about October 1, 2020, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **DAVID GERALD MINKKINEN**, during a recorded interview with agents of the West Virginia Commission on Special Investigations and United States Department of Labor, Office of Inspector General, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by stating that "If somebody was using the [Deloitte] use case from another state I'm not aware of it . . . ." This statement was false because, as defendant **DAVID GERALD MINKKINEN** then and there knew, he took use cases from a Deloitte project in Massachusetts, transmitted them to Sagitec employees, and knew that they were used to develop Sagitec's Neosurance product.

In violation of Title 18, United States Code, Section 1001(a)(2).

28

**COUNT THIRTEEN**

78.    Paragraphs one through forty-one are incorporated herein by reference as if repeated and re-alleged in full.

79.    On or about March 12, 2021, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **SIVARAMAN SAMBASIVAM**, during a recorded interview with agents of the West Virginia Commission on Special Investigations and United States Department of Labor, Office of Inspector General, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is: When asked if he was "aware of whether any [former Deloitte employees who joined Sagitec] took Deloitte intellectual property when they left Deloitte," defendant **SIVARAMAN SAMBASIVAM** stated that "[I]t's hard for me to say whether they took it or not. . . . David [Minkkinen] has had some material, that I know of, some proposal material I've seen. I don't know if that's considered as intellectual property or not, but I've seen that." This statement was false because, as defendant **SIVARAMAN SAMBASIVAM** then and there knew, David Minkkinen obtained uFACTS source code and use cases from Deloitte's Massachusetts project, which defendant **SIVARAMAN SAMBASIVAM** fully understood to be Deloitte intellectual property.

In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT FOURTEEN

80.     Paragraphs one through forty-one are incorporated herein by reference as if repeated and re-alleged in full.

81.     On or about March 12, 2021, in Kanawha County, West Virginia, within the Southern District of West Virginia, defendant **SIVARAMAN SAMBASIVAM**, during a recorded interview with agents of the West Virginia Commission on Special Investigations and United States Department of Labor, Office of Inspector General, willfully and knowingly made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, that is: When asked if he took Deloitte "materials," defendant **SIVARAMAN SAMBASIVAM** stated that "No, I did not." This statement was false because, as defendant **SIVARAMAN SAMBASIVAM** then and there knew, he took a uFACTS Oracle database, data tables from Deloitte's Massachusetts project, and other Deloitte documents and files.

In violation of Title 18, United States Code, Section 1001(a)(2).

UNITED STATES OF AMERICA
WILLIAM S. THOMPSON
United States Attorney


By: _____
Jonathan T. Storage
Assistant United States Attorney


_____
Candina S. Heath, Senior Counsel
Department of Justice
Computer Crime and Intellectual Property Section