**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    CRIMINAL ACTION NO. 2:22-cr-00163

DAVID GERALD MINKKINEN
SIVARAMAN SAMBASIVAM,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant Sivaraman Sambasivam's and David Gerald Minkkinen's Joint Motion to Dismiss the Superseding Indictment In-Part* (Document 232), the *Government's Response to the Defendants' Joint Motion to Dismiss the Superseding Indictment in Part* (Document 266), *Defendants Sivaraman Sambasivam's and David Gerald Minkkinen's Reply to the Government's Response in Opposition to Their Joint Motion to Dismiss the Superseding Indictment In-Part* (Document 277), and attached exhibits.  For the reasons stated herein, the Court finds that the motion should be denied.

**ALLEGATIONS IN THE SUPERSEDING INDICTMENT**

The Defendants, Sivaraman Sambasivam and David Gerald Minkkinen, were indicted on August 23, 2022.  A *Superseding Indictment* (Document 186) was returned on May 31, 2023.  As to Defendant Sambasivam, the indictment charges that he has violated 18 U.S.C. § 1832(a)(5)

1

(Conspiracy to Steal Trade Secrets), 18 U.S.C. §§ 1343 and 1349 (Conspiracy to Commit Wire Fraud), 18 U.S.C. §§ 1343 and 2 on three occasions (Wire Fraud and Aiding and Abetting Wire Fraud), and twice violated 18 U.S.C. § 1001(a)(2) (Making of a False Statement).   As to Defendant David Minkkinen, the indictment charges that he has violated 18 U.S.C. § 1832(a)(5) (Conspiracy to Steal Trade Secrets), 18 U.S.C. §§ 1343 and 1349 (Conspiracy to Commit Wire Fraud), 18 U.S.C. §§ 1343 and 2 on three occasions (Wire Fraud and Aiding and Abetting Wire Fraud), and seven times violated 18 U.S.C. § 1001(a)(2) (Making of a False Statement).

Generally, the indictment alleges the following:

Deloitte owned and marketed a web-based software platform, Unemployment Framework for Automated Claim & Tax Services (uFACTS).   This software platform was used to process unemployment claims for state agencies.   The platform's "source code, database, data tables, use cases, software designs, business rules, schema, logic, artifacts, and architecture constituted Deloitte intellectual property."   (Superseding Indictment ¶ 1.)   This uFACTS platform had been implemented in Minnesota, New Mexico, and Massachusetts.   The Defendants were employed by Deloitte, with Defendant Minkkinen as the Unemployment Insurance Practice Leader and Defendant Sambasivam as the lead system architect for the uFACTS Solution Framework.

Between June 2013 and December 2015, eleven employees left Deloitte and began to work for Sagitec Solutions, LLC, which also had an Unemployment Insurance practice.   Mr. Minkkinen and Mr. Sambasivam separately left Deloitte and joined Sagitec in 2013.   In their employment contracts with Deloitte, the Defendants agree not to disclose any of Deloitte's proprietary property to third parties or retain the property.   Defendant Minkkinen also was reminded through a

2

resignation checklist that he was not to copy client or Deloitte information, and he was to return all records that he had checked out or were a work in progress.   (Superseding Indictment ¶ 8.)

However, pursuant to an agreement between the Defendants, first Defendant Minkkinen, and then Defendant Sambasivam, copied and downloaded several pieces of Deloitte proprietary information, including the uFACTS source code, data, and use cases, without authorization.[1]   For example, between 2013 to 2015, one or both of the Defendants copied or transferred to Sagitec an executive summary of Deloitte's response to a request for proposal, a marketing brochure, Deloitte's uFACTS related fraud detection deliverables for Wisconsin and Minnesota, use case documents from Deloitte's Massachusetts's uFACTS project, the uFACTS Oracle database, the uFACTS Data Definition Language, a 227-page document titled the "uFACTS Solution Framework," and a spreadsheet titled "Deloitte Consulting Project Pricing Model."   The information was mostly transmitted over email, sometimes between the two Defendants, other times including other Sagitec employees.   In addition to information sent by the Defendants, there are emails sent by Sagitec employees to the Defendants, discussing additional information regarding Deloitte's uFACTS software, including the uFACTS code base and use cases.

Until on or about September 20, 2013, Defendant Sambasivam had been employed by Deloitte, but was communicating with Sagitec employees, including Defendant Minkkinen, about the uFACTS software.   While still employed by Deloitte, Defendant Sambasivam emailed both a link and corresponding login information to a Sagitec employee for Deloitte's Massachusetts project.

---

1 More specific instances and examples of the copying and transmission of information from Deloitte are included in the Superseding Indictment ¶¶ 11-31.

3

In or about 2015, Sagitec was awarded a contract to design and develop an unemployment insurance benefit claim software system for the states of Maryland and West Virginia. The interests of the two states were combined into the Maryland-West Virginia Consortium (Consortium). In Sagitec's contract with the Consortium, signed by Defendant Minkkinen, Sagitec agreed that its work product would not infringe on the proprietary rights of a third party. The money to fund the project was provided by federal grants from the United States Department of Labor.

To complete the project, Sagitec employees worked with state employees from West Virginia and Maryland. In 2016, West Virginia state employees noticed that there were references to Massachusetts, New Mexico, and Deloitte within the project materials used by Sagitec. After seeing these references, an employee contacted the West Virginia Commission on Special Investigations. Upon learning of this complaint, a Maryland Assistant Attorney General (MD AAG) sent a letter to Defendant Minkkinen, raising concerns about the project including references to Massachusetts within Sagitec's documents. On approximately July 25, 2016, Defendant Minkkinen replied to the MD AAG with a letter drafted with the help of Defendant Sambasivam, which said that references to other states were innocent, and due to Sagitec using them as examples "to discuss potential implementation options" for West Virginia and Maryland. (Superseding Indictment ¶ 34.) The Defendants made these statements despite their preexisting knowledge and firm belief that Deloitte considered the subject information to constitute trade secrets.

In reply, the MD AAG sent a follow-up letter to Defendant Minkkinen asking, in part, whether any Sagitec employees had "retained . . . any software, source code, data tables, data

structures, data dictionaries, documentation, deliverables, or other works" belonging to Deloitte, or had incorporated such items into any work delivered to the Consortium.   (Superseding Indictment ¶ 35.)   In a response to this questionnaire, prepared by both Defendants, signed by Defendant Minkkinen, it was denied that any Sagitec personnel had ever retained any of the listed information or had incorporated it into their work for the Consortium.   This position was again stated by Defendant Minkkinen during a November 10, 2016 meeting with officials from Maryland's Department of Labor, Licensing, and Regulation.

Upon learning of a criminal investigation, Defendant Minkkinen sent copies of the response letters written to the MD AAG to the investigators in West Virginia and Virginia. During later interviews by an investigating agent in Charleston, West Virginia, both Defendants continued to deny any retention or use of Deloitte's proprietary information.

The Defendants have continued to repeatedly deny any improper use of Deloitte's uFACTS software.   For example, Deloitte began accusing Sagitec of theft of trade secrets in 2016. Relying on statements made by the Defendants, Sagitec's counsel denied Deloitte's accusations.[2] In response to a later follow-up letter from Deloitte, with the assistance of the Defendants, Sagitec again denied that they had obtained any Deloitte proprietary materials.

## STANDARD OF REVIEW

Rule 12(b)(3) provides that a motion to dismiss for failure to state an offense must be made before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."   Fed. R. Crim. P. 12(b)(3)(B)(v).   "An indictment must

---

2 Deloitte is currently pursuing a civil claim for theft of trade secrets, specifically related to the uFACTS software, against Sagitec.   *Deloitte Consulting LLP et al v. Sagitec Solutions LLC*, 1 :23-cv-325 (D. De. 2023).

contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (citations and quotation marks omitted). In addition, "the indictment must include every essential element of the offense, or else the indictment is invalid; and mere reference to the applicable statute does not cure the defect." *Id.* "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "When a criminal defendant challenges the sufficiency of an indictment prior to the verdict, we apply a heightened scrutiny." *Kingrea*, 573 F.3d at 191.

## DISCUSSION

The Defendants argue that "Count One alleges only that Mr. Sambasivam or Mr. Minkkinen 'knew and firmly believed *that Deloitte considered'* the relevant items to be trade secret information," rather than that *they,* the Defendants, "believed the information to be a trade secret." (Def.s' Mot. at 1–2.) Therefore, they argue that Count One does not adequately allege conspiracy to steal trade secrets because it does not adequately allege the knowledge element. They contend that "the government failed to allege that Mr. Sambasivam and Mr. Minkkinen knowingly joined an agreement with the specific intent to steal information that each knew or believed to be Deloitte's trade secrets, with an intent to convert the trade secrets for the economic benefit of others, with the intent or knowledge that Deloitte would suffer harm." (*Id.* at 5.) In their reply brief, they also argue that no evidence of their knowledge or belief that the materials

6

were trade secrets was presented to the grand jury.   The Defendants further contend that Counts Two through Five, charging conspiracy to commit wire fraud and substantive wire fraud, are not legally viable because the objects of the alleged conspiracy and the scheme to defraud are not traditional property rights.   They argue that the factual allegations in this case are similar to those in *Ciminelli v. United States*, 143 S.Ct. 1121 (2023), wherein the Supreme Court rejected a theory that the defendant had committed wire fraud by scheming "to deprive the victim of potentially valuable economic information necessary to make discretionary economic decisions."   143 S.Ct. at 1124.   The Defendants note that the communications making up the wire fraud allegations in Counts Four and Five occurred in 2020 and 2021, after Sagitec's contractual relationship with the Consortium had ended.   They also argue that, because "Maryland remained in the Consortium and has successfully implemented its unemployment insurance system," the only government interest that was violated or lost was "the ability to make fully informed economic decisions relating to the project and its contract."   (Def.s' Mot. at 11–12.)

The United States argues that Count One contains sufficient allegations that the Defendants acted with the requisite knowledge and intent, citing language in the Superseding Indictment that tracks the language of the criminal statute.   It notes that the statement regarding the Defendants' knowledge that Deloitte considered the material to be protected may be considered surplusage but does not warrant dismissal where the indictment properly alleges all elements of the charge.   The United States further argues that the use of Deloitte's trade secrets and West Virginia's money were the objects of the conspiracy to commit wire fraud and substantive wire fraud counts.   It argues that "the object of the defendants' fraud was to use stolen intellectual property to cheat their way into obtaining a lucrative public contract."   (US Resp. at 11.)

### A. Count One

Count One alleges that the Defendants conspired to convert trade secrets. The Superseding Indictment alleges that the Defendants "with intent to convert a trade secret…and intending and knowing that the offense will injure any owner of that trade secret, did knowingly and willfully conspire and agree to steal trade secret information belong to Deloitte." (Superseding Indictment at ¶ 43.)   It further alleges that the Defendants "knew and firmly believed that Deloitte considered the uFACTS source code, database, use cases, software designs, schema, logic artifacts, and architecture to be trade secret information."   (*Id.* at ¶ 44.)   In addition, the Defendants "knew and firmly believed that Deloitte took reasonable steps to maintain the secrecy of its trade secret information, along with other associated confidential and proprietary information," and "knew and firmly believed that the Deloitte trade secret information and the Deloitte confidential and proprietary information derived independent economic value from not being generally known to, and not being readily ascertainable through proper means by, the public."   (*Id.* at ¶ 45–46.)

The Court finds that these allegations sufficiently allege scienter.   The language in Paragraph 43 closely tracks the statutory language contained in 18 U.S.C. §1832(a)(5).   While the language contained in Paragraph 44 alleging that the Plaintiffs knew that Deloitte considered the material to be trade secret information does not accurately reflect any applicable legal standard, the remaining paragraphs sufficiently allege that the Defendants had the requisite knowledge and belief.   Appropriate jury instructions will ensure that the jury understands the applicable legal standard and all elements that the United States must prove.

8

B. *Counts Two Through Five*

Count Two alleges that the Defendants "knowingly conspired…to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted by means of wire communications in interstate commerce" certain materials.  (Superseding Indictment at ¶ 49.)  The Superseding Indictment alleges that the object of the conspiracy was "to use Deloitte intellectual property to facilitate and expedite the development and delivery of Sagitec's competing Neosurance software for its Unemployment Insurance (UI) practice…[and] to enable Sagitec to receive and retain funds received for the development and implementation of Sagitec's UI solution."  (*Id.* at ¶ 50.)  Count Two alleges that the Defendants made material misrepresentations about their use of Deloitte intellectual property, including in "interviews with an investigator in Charleston, Kanawha County, West Virginia on or about October 1, 2020 and March 12, 2021, respectively."  (*Id.* at ¶ 54.)

Counts Three through Five are substantive wire fraud counts.  Those counts allege that "for the purpose of executing, and attempting to execute, the scheme to defraud the Maryland-West Virginia Consortium and Deloitte, and for obtaining money and property by false and fraudulent pretenses," the Defendants, aided and abetted by each other, transmitted the following communications: A September 14, 2017 email sent by Mr. Minkkinen to investigators in West Virginia and Virginia; an October 1, 2020 telephonic communication by Mr. Minkkinen from Minnesota to West Virginia; and a March 12, 2021 videoconference interview between Mr. Sambasivam and an investigator in West Virginia.

18 U.S.C. § 1343 establishes criminal penalties for "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice." 18 U.S.C. § 1349 provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."  As with Count One, the language in the Superseding Indictment tracks the statutory language.

The Supreme Court has rejected attempts by the United States to promote a broad reading of the federal fraud statutes, emphasizing that the "object of [the defendants'] dishonesty" must be to "obtain…money or property."  *Kelly v. United States*, 140 S. Ct. 1565, 1568 (2020).  The money or property must be "an object of the fraud," rather than "play[ing] some bit part in a scheme."  *Id.* at 1573.  "[A] property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme."  *Id.*

Most recently, the Supreme Court rejected the "right to control" theory, under which "a defendant is guilty of wire fraud if he schemes to deprive the victim of potentially valuable economic information necessary to make discretionary economic decisions."  *Ciminelli v. United States*, 143 S. Ct. 1121, 1124 (2023) (internal quotation marks omitted.)  The Supreme Court explained that the right to control theory "treats mere information as the protected interest" such that "almost any deceptive act could be criminal."  *Id.* at 1128.  The Court found that the theory impermissibly "criminalizes traditionally civil matters and federalizes traditionally state matters."

10

*Id.*   In *Ciminelli*, the defendant's construction company paid a well-connected lobbyist to help it obtain state-funded jobs, including eventually devising a scheme whereby the person in charge of developing certain project proposals worked with the lobbyist and the defendant to develop a request for proposals designed to favor the defendant's construction company.   *Id.* at 1125.   The scheme worked, and the construction company won a $750 million contract.   *Id.*   The Supreme Court found that jury instructions defining property to include "intangible interests such as the right to control the use of one's assets" and otherwise setting forth the right-to-control theory were erroneous.   *Id.* at 1125–26.

Since this motion was briefed, the Supreme Court found that wire fraud could be proved under a fraudulent inducement theory, where a defendant sought to obtain government contracts by falsely representing that it was in compliance with a governmental requirement that a disadvantaged business participate in the work.   *Kousisis v. United States*, 605 U.S. 114, 123 (2025).   The Court rejected an argument that the wire fraud statute requires that the defendant intend to cause economic harm to the victim.   *Id.* at 124.

The Superseding Indictment alleges as to Counts Two through Five that the Defendants used the wire communications to obtain money and property by false and fraudulent pretenses. (Superseding Indictment at ¶¶ 49, 61.)   The Court will issue jury instructions consistent with applicable law and precedent.   The United States will be required to present evidence proving that the Defendants schemed to deprive a victim of traditional property interests, and that the property at issue was an object of the fraud.   The Superseding Indictment does not contain factual allegations that demonstrate that the United States is relying on an impermissible theory or would

be unable to prove the wire fraud conspiracy and substantive wire fraud counts.[3]   In short, as with

Count One, the Defendants' motion focuses on evidence yet to be presented and legal theories yet

to be argued.   Proper jury instructions, or legal findings on a motion for a directed verdict after

presentation of evidence, will prevent a conviction without sufficient evidence of the elements of

each charge.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that

*Defendant Sivaraman Sambasivam's and David Gerald Minkkinen's Joint Motion to Dismiss the*

*Superseding Indictment In-Part* (Document 232) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendants and their

respective counsel, to the United States Attorney, to the United States Probation Office, and to the

Office of the United States Marshal.

ENTER:      April 8, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

3 The Defendants contend that Counts Four and Five involve communications that took place after West Virginia had withdrawn from the Consortium.  Because that fact is not apparent on the face of the Superseding Indictment, the Court will not determine at this point whether either the Consortium's money or Deloitte's intellectual property could conceivably be the object of a fraudulent communication made after Sagitec's contractual relationship had ended.