**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                  CRIMINAL ACTION NO. 2:22-cr-00163

DAVID GERALD MINKKINEN
SIVARAMAN SAMBASIVAM,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant Sivaraman Sambasivam's Motion to Sever Trial From Co-Defendant David Minkkinen* (Document 148), the *Government's Opposition to Defendant Sivaraman Sambasivam's Motion to Sever Trial From Co-Defendant David Minkkinen* (Document 160), and all attached exhibits.  For the reasons stated herein, the Court finds that the motion should be denied.

**SUPERSEDING INDICTMENT**

The Defendants, Sivaraman Sambasivam and David Gerald Minkkinen, were indicted on August 23, 2022.  A *Superseding Indictment* (Document 186) was returned on May 31, 2023.  As to Defendant Sambasivam, the indictment charges that he has violated 18 U.S.C. § 1832(a)(5) (Conspiracy to Steal Trade Secrets), 18 U.S.C. §§ 1343 and 1349 (Conspiracy to Commit Wire Fraud), violated 18 U.S.C. §§ 1343 and 2 three times (Wire Fraud & Aiding and Abetting Wire Fraud), and twice violated 18 U.S.C. § 1001(a)(2) (Making of a False Statement).  As to

Defendant David Minkkinen, the indictment charges that he has violated 18 U.S.C. § 1832(a)(5) (Conspiracy to Steal Trade Secrets), 18 U.S.C. §§ 1343 and 1349 (Conspiracy to Commit Wire Fraud), violated 18 U.S.C. §§ 1343 and 2 three times (Wire Fraud & Aiding and Abetting Wire Fraud), and seven times violated 18 U.S.C. § 1001(a)(2) (Making of a False Statement).

Generally, the indictment alleges the following:

Deloitte owned and marketed a web-based software platform, Unemployment Framework for Automated Claim & Tax Services (uFACTS). This software platform was used to process unemployment claims for state agencies. The platform's "source code, database, data tables, use cases, software designs, business rules, schema, logic, artifacts, and architecture constituted Deloitte intellectual property." (Superseding Indictment ¶ 1.) This uFACTS platform had been implemented in Minnesota, New Mexico, and Massachusetts. The Defendants were employed by Deloitte, with Defendant Minkkinen as the Unemployment Insurance Practice Leader and Defendant Sambasivam as the lead system architect for the uFACTS Solution Framework.

Between June 2013 and December 2015, eleven employees left Deloitte and began to work for Sagitec Solutions, LLC, which also had an Unemployment Insurance practice. Mr. Minkkinen and Mr. Sambasivam separately left Deloitte and joined Sagitec in 2013. In their employment contracts with Deloitte, the Defendants agree not to disclose any of Deloitte's proprietary property to third parties or retain the property. Defendant Minkkinen also was reminded through a resignation checklist that he was not to copy client or Deloitte information, and he was to return all records that he had checked out or were a work in progress. (*Id.* ¶ 8.)

However, pursuant to an agreement between the Defendants, first Defendant Minkkinen, and then Defendant Sambasivam, copied and downloaded several pieces of Deloitte proprietary

2

information, including the uFACTS source code, data, and use cases, without authorization.[1]   For example, between 2013 to 2015, one or both of the Defendants copied or transferred to Sagitec an executive summary of Deloitte's response to a request for proposal, a marketing brochure, Deloitte's uFACTS related fraud detection deliverables for Wisconsin and Minnesota, use case documents from Deloitte's Massachusetts uFACTS project, the uFACTS Oracle database, the uFACTS Data Definition Language, a 227-page document titled the "uFACTS Solution Framework," and a spreadsheet titled "Deloitte Consulting Project Pricing Model."   The information was mostly transmitted over email, sometimes between the two Defendants, other times including other Sagitec employees.   In addition to information sent by the Defendants, there are emails sent by Sagitec employees to the Defendants, discussing additional information regarding Deloitte's uFACTS software, including the uFACTS code base and use cases.

Until on or about September 20, 2013, Defendant Sambasivam had been employed by Deloitte, but was communicating with Sagitec employees, including Defendant Minkkinen, about the uFACTS software.   While still employed by Deloitte, Defendant Sambasivam emailed both a link and corresponding login information to a Sagitec employee for Deloitte's Massachusetts project.

In or about 2015, Sagitec was awarded a contract to design and develop an unemployment insurance benefit claim software system for the states of Maryland and West Virginia.   The interests of the two states were combined into the Maryland-West Virginia Consortium (Consortium).   In Sagitec's contract with the Consortium, signed by Defendant Minkkinen, Sagitec agreed that its work product would not infringe on the proprietary rights of a third party.

---

[1] More specific instances and examples of the copying and transmission of information from Deloitte are included in the Superseding Indictment ¶¶ 11-31.

The money to fund the project was provided by federal grants from the United States Department of Labor.

To complete the project, Sagitec employees worked with state employees from West Virginia and Maryland.   In 2016, West Virginia state employees noticed that there were references to Massachusetts, New Mexico, and Deloitte within the project materials used by Sagitec.   After seeing these references, an employee contacted the West Virginia Commission on Special Investigations.   Upon learning of this complaint, a Maryland Assistant Attorney General (MD AAG) sent a letter to Defendant Minkkinen, raising concerns about the project including references to Massachusetts within Sagitec's documents.   On approximately July 25, 2016, Defendant Minkkinen replied to the MD AAG with a letter drafted with the help of Defendant Sambasivam, which said that references to other states were innocent, and due to Sagitec using them as examples "to discuss potential implementation options" for West Virginia and Maryland. (*Id.* ¶ 34.)   The Defendants made these statements despite their preexisting knowledge and firm belief that Deloitte considered the relevant information to constitute trade secrets, and that they had been using Deloitte propriety information.

In reply, the MD AAG sent a follow-up letter to Defendant Minkkinen asking, in part, whether any Sagitec employees had "retained . . . any software, source code, data tables, data structures, data dictionaries, documentation, deliverables, or other works" belonging to Deloitte, or had incorporated such items into any work delivered to the Consortium.   (*Id.* ¶ 35.)   In a response to this questionnaire, prepared by both Defendants, signed by Defendant Minkkinen, it was denied that any Sagitec personnel had ever retained any of the listed information or had incorporated it into their work for the Consortium.   This position was again stated by Defendant

Minkkinen during a November 10, 2016 meeting with officials from Maryland's Department of Labor, Licensing, and Regulation.

Upon learning of a criminal investigation, Defendant Minkkinen sent copies of the response letters, written to the MD AAG, to the investigators in West Virginia and Virginia. During later interviews by an investigating agent in Charleston, West Virginia, both Defendants continued to deny any retention or use of Deloitte's proprietary information.

The Defendants have continued to repeatedly deny any improper use of Deloitte's uFACTS software.  For example, Deloitte began accusing Sagitec of theft of trade secrets in 2016. Relying on statements made by the Defendants, Sagitec's counsel denied Deloitte's accusations.[2] In response to a later follow-up letter from Deloitte, with the assistance of the Defendants, Sagitec again denied that they had obtained any Deloitte proprietary materials.

Defendant Sambasivam now moves to sever trial from co-Defendant Minkkinen.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 14 states that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials."   If joinder is proper under Rule 8, then the decision to sever trial is within the trial court's discretion.  *U.S. v. Montgomery*, 262 F.3d 233, 244 (4th Cir. 2001).  Convincing a court to sever charges is "a difficult task" and occurs "*only* if there is a serious risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence."  *U.S. v. Blair*, 661 F.3d 755, 768 (4th Cir. 2011) (citing *U.S. v. Cardwell*, 433 F.3d 378, 384–85 (4th Cir. 2005)).

---

[2] Deloitte is currently pursuing a civil claim for theft of trade secrets, specifically related to the uFACTS software, against Sagitec.  *Deloitte Consulting LLP et al v. Sagitec Solutions LLC*, 1:23-cv-325 (D. De. 2023).

Otherwise stated, the defendant bears the burden of demonstrating "that actual prejudice would result from a joint trial, . . . and not merely that a separate trial would offer a better chance of acquittal."   *U.S. v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995).

Regarding conspiracy, the general rule is that "defendants charged with participation in the same conspiracy are to be tried jointly."   *U.S. v. Akinkoye*, 185 F.3d 192, 197 (4th Cir. 1999). "[T]he mere fact that evidence against one or more co-conspirator is stronger or more inflammatory than the evidence against others does not necessarily require severance."   *U.S. v. Campbell*, 963 F.3d 309, 318 (4th Cir. 2020).   Concerns about "prejudicial spillover" from one co-conspirator to another can often be mitigated by "explicit instruction that the jury must consider each Defendant and each count separately, while also emphasizing that it would be improper to permit the jury's feelings about the nature of the crimes to interfere with the decision-making process."   *Campbell*, 963 F.3d at 319; *see also Blair*, 661 F.3d at 768; *Zafiro v. U.S.*, 506 U.S. 534, 539 (1993).

## DISCUSSION

Defendant Sambasivam argues that a joint trial with his alleged co-conspirator Defendant Minkkinen is unfairly prejudicial.   Defendant Sambasivam points to several issues, including the (1) factual complexity of the case, (2) different roles each Defendant had at Deloitte and Sagitec, and (3) disparity between the conduct and evidence attributable to each of the Defendants.   The United States responds that the Defendant has failed to show actual prejudice.

The Defendant has not argued that joinder in this case violated Rule 8, leaving the decision to sever well within this Court's discretion.   *U.S. v. Montgomery*, 262 F.3d 233, 244 (4th Cir. 2001).   This Court finds that Defendant Sambasivam has failed to show that there is a "serious

risk that a joint trial would . . . prevent the jury from making a reliable judgment about guilt or innocence." *Blair*, 661 F.3d at 768 (citing *Cardwell*, 433 F.3d at 384–85).

Although the evidence against Defendant Minkkinen may arguably be more direct or extensive, a jury can be properly cautioned via instructions to carefully consider the conduct and actions of each Defendant separately. Additionally, Defendant Sambasivam does not point to any inculpatory evidence that would be admissible in the joint trial but inadmissible in a separate trial, or even *any* differences in evidence that would occur between the two trials. Much of the evidence that Defendant Sambasivam is worried about—the conduct and documents relevant to Defendant Minkkinen—would almost surely be admissible as relevant evidence of a conspiracy for theft of trade secrets, and aid in establishing Defendant Sambasivam's knowledge of the conspiracy, intent and mutual understanding to further the conspiracy, and motive to make false statements.[3] The fact that Defendant Sambasivam has failed to show how different evidence would be admissible at each trial reflects a low possibility of prejudice. *U.S. v. Campbell*, 963 F.3d 309, 319 (4th Cir. 2020) (citing *United States v. Cole*, 857 F.2d 971, 974 (4th Cir. 1988)).

The Defendant's additional arguments otherwise fail. Although the Defendant is correct that this case contains factually intensive questions surrounding the origin, ownership, and possession of intangible software code, that complexity will not be remedied by separating the trial. Additionally, such a risk of prejudice can further be mitigated by jury instructions and skillful advocacy.

---

[3] Defendant Sambasivam agrees that "the government's allegations against Mr. Sambasivam center around whether he knew of specific actions taken by Mr. Minkkinen." (Mot. at 8) (Doc. 148.) Such an allegation almost surely requires the United States to establish what actions were taken by Mr. Minkkinen.

Regarding 'factual' spillover, the fact that each of the Defendants "*may* have been exposed" to different levels of information by virtue of their roles at prior employers, at Sagitec, and within the alleged conspiracy, is not enough.   A showing of *actual* prejudice is required.   The Defendant's concern that a jury *may* impute the knowledge or intent of a key participant (Minkkinen), onto a minor participant (Sambasivam), treads too far into speculation.   This Court trusts that jurors can appreciate the different roles between two defendants and that some conduct may be attributable to one of the Defendants or the other, and trusts that counsel will aid the jury in teasing out any nuance.   Additionally, "the mere fact that evidence against one or more co-conspirator is stronger . . . than the evidence against others does not necessarily require severance." *Campbell*, 963 F.3d at 318.

Regarding 'emotional' spillover, the conduct of each of the Defendants is comparably mild. Without allegations of the type of conduct that may prompt a strong emotional response or public condemnation, there is little risk that a jury's feelings will be so embroiled by Mr. Minkkinen's conduct as to unfairly imperil Mr. Sambasivam's presumption of innocence.   This Court is also skeptical that a disparity between the number of counts in the indictment pertaining to each of the Defendants prevents the jury from fairly resolving this case.

Ultimately, although there is a possibility that separate trials could benefit Defendant Sambasivam by distancing himself from Defendant Minkkinen, separation requires actual prejudice, "not merely that a separate trial would offer a better chance of acquittal."   *U.S. v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995).

8

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Sivaraman Sambasivam's Motion to Sever Trial From Co-Defendant David Minkkinen* (Document 148) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendants and their respective counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:    April 8, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA