IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.                                                          CRIMINAL ACTION NO. 2:22-cr-00163

DAVID GERALD MINKKINEN,
SIVARAMAN SAMBASIVAM,

Defendants.

MEMORANDUM OPINION AND ORDER

The parties in this matter have filed several motions in limine and other pretrial motions, which are fully briefed and ripe for ruling. The following rulings are provided to assist the parties in preparing for trial.

*1. Sagitec Report and Out of Court Statements*

The Court has reviewed the *Motion in Limine of Defendant David Gerald Minkkinen* (Document 197), the *Government's Response in Opposition to Motion in Limine of Defendant David Minkkinen* (Document 234), and *Defendant Minkkinen's Reply* (Document 259). The Court has also reviewed *Defendant Sivaraman Sambasivam's Motion in Limine to Limit or Exclude Out-of-Court Statements* (Document 206), the *Government's Response in Opposition to Defendant Sivaraman Sambasivam's Motion in Limine to Limit or Exclude Out-of-Court Statements* (Document 237), and *Defendant Sivaraman Sambasivam's Reply to Government's*

*Response to Defendants' Motion in Limine to Exclude Out-of-Court Statements (Dkt. 237)* (Document 253).

Mr. Minkkinen seeks to preclude introduction of "(1) any interview statements and summaries, or references thereto, contained in the Sagitec Report which refer to Mr. Minkkinen; (2) any out-of-court statements by co-defendant Mr. Sambasivam which directly or indirectly reference Mr. Minkkinen, and (3) any post-conspiracy statements made to the government by alleged participants in the conspiracy."  (Document 197 at 1.)  During the investigation of this matter, the Defendants' employer, Sagitec, retained counsel to conduct an internal investigation. Mr. Minkkinen, among other employees, was interviewed during that investigation, and notes or summaries of the interviews are included in the "Sagitec Report" prepared following the investigation.   Mr. Minkkinen contends that the "statements are part of a prepared report summarizing the investigation and factual findings of attorneys, not testimony or a statement made under oath," and are inadmissible hearsay.  (Document 197 at 3.)  He argues that the interview statements "were selectively included and edited based on Sagitec's attorneys' impressions of the truth during their investigation."  (Document 197 at 5.)  In addition, Mr. Minkkinen seeks to exclude "[a]ny of co-defendant Mr. Sambasivam's interview statements to any investigator implicating Mr. Minkkinen's alleged involvement in criminal conduct."  (Document 197 at 6.) He notes that he would be unable to refute any statements through cross-examination if Mr. Sambasivam chooses not to testify.   Mr. Minkkinen also seeks to exclude post-conspiracy statements made by alleged participants in the conspiracy.  Mr. Sambasivam seeks to exclude substantially the same evidence and statements applicable to him.

The United States argues that statements and summaries in the Sagitec Report attributable to the Defendants are admissible under Rule 801(d)(2)(A) as admissions of a party opponent. It argues that the Sagitec Report is admissible as a present sense impression because it "reflects a real-time record of the authors' perception." (Document 234 at 5.) In addition, it contends that the Sagitec Report is admissible as a recorded recollection, although it concedes that it would be admissible only if a testifying witness, familiar with the report, is unable to recall the matters contained in the report. The United States also contends the Sagitec Report is admissible under Rule 805 and does not violate the confrontation clause. In addition, the United States contends that the Defendants' interview statements are admissible as to each other. It argues that Mr. Sambasivam's denials of taking the Deloitte materials were made in furtherance of the conspiracy and would be admissible when introduced for a purpose other than to prove the truth of the matter asserted. Finally, the United States argues that the end date of the alleged conspiracy is at issue, and it takes the position that the conspiracy is ongoing, such that no statements should be considered "post-conspiracy."

In reply, Mr. Minkkinen explains that he does not seek to preclude the authors of the Sagitec Report from appearing and testifying about what they heard him say. He does maintain that notes and summaries of his statements are not admissible, and he rejects the suggestion that "statements made to the Sagitec lawyers by witnesses and summaries to statements made to Sagitec's attorneys by witnesses in the formal report of a months-long investigation commissioned by a corporate entity constitute" present sense impressions under Rule 803(a). (Document 259 at 2.) Because the Sagitec Report was jointly authored, Mr. Minkkinen argues that it cannot be used as a recorded recollection. Mr. Sambasivam presents similar arguments.

The Court finds that the statements contained within the Sagitec Report are hearsay, not covered by any exception, and cannot be presented as direct evidence.   The Sagitec Report was prepared by counsel, retained by Sagitec to conduct an internal investigation, not a statement or admission made by the Defendant(s).   People may testify to statements they heard either Defendant make, where otherwise permissible under the Rules, but a report purporting to summarize an interview with a Defendant does not constitute a statement made or adopted by the Defendant.   In addition, the confrontation clause precludes introduction of statements or evidence via the report, rather than through witnesses who can be questioned and cross-examined.   The Court further finds that any probative value of summarized statements of interviewees contained in the Sagitec Report is substantially outweighed by the risk of unfair prejudice to the Defendants under Rule 403.   Further, the Court finds that the motion should be granted with respect to statements given by persons other than the Defendant, including his co-Defendant.

Accordingly, after careful consideration, the Court **ORDERS** that the *Motion in Limine of Defendant David Gerald Minkkinen* (Document 197) and *Defendant Sivaraman Sambasivam's Motion in Limine to Limit or Exclude Out-of-Court Statements* (Document 206) be **GRANTED**. Should the United States believe it is permitted to use the Sagitec Report outside of direct evidence (e.g., as a prior inconsistent statement), it is **ORDERED** to first approach the bench to seek leave. To the extent the Defendants seek to preclude co-conspirator statements potentially made after the conclusion of the conspiracy, the Court **ORDERS** that the United States approach prior to seeking to introduce such statements to allow the Court to issue a ruling after hearing the context in which the evidence is proposed.

### 2. Rule 404(b) Motion

The Court has reviewed *Defendants Minkkinen and Sambasivam's Joint Omnibus Motion in Limine with Authorities* (Document 199), the *Government's Response in Opposition to Defendants Minkkinen and Sambasivam's Joint Omnibus Motion in Limine [ECF No. 199]* (Document 235), and *Defendants David Gerald Minkkinen's and Sivaraman Sambasivam's Reply in Support of Joint Omnibus Motion in Limine* (Document 258).

The Defendants seek to preclude introduction of Rule 404(b) evidence of other crimes, wrongs, or acts; any testimony or argument that Sagitec was not a qualified bidder for the consortium project; and any argument or statement "which conflates Deloitte's uFACTS source code or properties with those of the Massachusetts' Division of Unemployment Assistance 'QUEST' technology." (Document 199 at 2.) The United States indicates that it does not intend to introduce evidence pursuant to Fed. R. Evid. 404(b), but only evidence intrinsic to the charges. It asserts that Sagitec's qualification to make a proposal for the Consortium project is properly at issue because "[a]ny material misrepresentations or omissions made by the defendants relating to Sagitec's 'qualifications' are relevant to the jury's determination as to whether the defendants' deceit materially and directly defrauded the Consortium." (Document 235 at 1-2.) Finally, the United States argues that uFACTS was the basis for developing the Massachusetts QUEST system, and so the programs may be discussed in conjunction at times.

The Court finds that the Defendants' omnibus motion should be granted, without objection, as to Rule 404(b) evidence. As to Sagitec's qualification as a bidder, the Court finds that any testimony or argument that Sagitec was not a qualified bidder is not relevant and risks unfair prejudice and confusion of the issues. However, testimony as to fraudulent, material

5

misstatements made by the Defendants during the bidding process would be relevant to the charges, and the motion in limine should be denied to the extent it seeks to exclude any evidence of misrepresentations made during the bidding process.  Finally, the Court finds that it will be necessary to hear the context of testimony related to QUEST and uFACTS to determine whether there is a risk of confusion.  The terms certainly cannot be used "interchangeably," as the Defendants argue in their reply, but attempting to set boundaries for testimony discussing uFACTS and QUEST prior to hearing that testimony is not a fruitful exercise.  Therefore, the Court **ORDERS** that *Defendants Minkkinen and Sambasivam's Joint Omnibus Motion in Limine with Authorities* (Document 199) be **GRANTED in part and DENIED in part**, as set forth herein.

### 3.  *Sambasivam Motion to Exclude Unfairly Prejudicial Statements*

The Court has reviewed *Defendant Sivaraman Sambasivam's Motion in Limine to Exclude Unfairly Prejudicial Statements* (Document 200), the *Government's Response in Opposition to Sivaraman Sambasivam's Motion in Limine to Exclude Unfairly Prejudicial Statements* (Document 236), and the *Defendant Sivaraman Sambasivam's Reply to Government's Response to His Motion in Limine to Exclude Unfairly Prejudicial Statements (Dkt. 200)* (Document 252). Mr. Sambasivam seeks to exclude statements he made in response to government agents' questioning, asserting that the questions were misleading and confusing.

Mr. Sambasivam indicates that the agents did not identify the alleged trade secrets and conflated the legal term "trade secrets" with intellectual property as defined by Deloitte in its employment agreement.  He contends that many of the questions are not probative of the charged offenses, including questions about what Deloitte considered to be intellectual property.  The United States argues that his statements to agents are admissible as statements by an opposing

party and are highly probative of his understanding of what materials were Deloitte's property and whether he lied to agents.

The Court finds that Mr. Sambasivam's statements should not be precluded in advance of trial, although they may remain subject to objections. Mr. Sambasivam is charged with violations of 18 U.S.C. § 1832(a)(5) (Conspiracy to Steal Trade Secrets), 18 U.S.C. §§ 1343 and 1349 (Conspiracy to Commit Wire Fraud), 18 U.S.C. § 1343 (Wire Fraud), and 18 U.S.C. § 1001(a)(2) (Making of a False Statement). Intellectual property is not necessarily a trade secret. Mr. Sambasivam's responses to questions about Deloitte's intellectual property (at 29:01, 29:41, 33:23, 1:27:54, 1:30:29, and 1:39:09) carry a high risk of unfair prejudice as to Count One, and will be admitted, if at all, only subject to an instruction limiting their use and consideration to Counts Two, Five, Thirteen and Fourteen, as relevant. There is a substantial risk of jury confusion if the United States is permitted to present questions from an investigator and responses from the Defendant that conflate broad concepts like "intellectual property" with trade secrets, particularly given that Count One of the Superseding Indictment requires proof of the Defendants' belief that materials constituted trade secrets, rather than the more straightforward question of whether the materials were in fact trade secrets.

The remaining questions and responses specifically identified by the Defendant likewise carry some risk of confusing the jury with broad or subjective terminology not consistent with the applicable legal standards. However, Mr. Sambasivam's responses to those questions have potential probative value as to his state of mind and understanding of the nature of the materials at issue, as well as his honesty with the investigators during the interview. Therefore, the Court finds exclusion premature at this stage. The Court **ORDERS** that the United States approach

7

prior to introducing Mr. Sambasivam's interview responses to permit the Court to evaluate their admissibility under Rule 403 in context with other evidence and testimony presented during trial. The Court **ORDERS** that *Defendant Sivaraman Sambasivam's Motion in Limine to Exclude Unfairly Prejudicial Statements* (Document 200) be **DENIED as premature**, as set forth herein.

### 4. *Public Records*

The Court has reviewed the *Defendant Sivaraman Sambasivam's and David Minkkinen's Motion in Limine to Admit Public Records Into Evidence* (Document 201), the *Government's Response in Opposition to Defendants' Motion to Admit Public Records Into Evidence [ECF No. 201]* (Document 246), and the *Defendants' Joint Reply to Government's Response in Opposition to Defendants' Motion in Limine to Admit Public Records Into Evidence (Dkt. 246)* (Document 256). The Defendants seek to admit certain business and public records into evidence without testimony from a records custodian. Specifically, they seek to admit "those contracts and records from Massachusetts and New Mexico specific to the government's claims relating to uFACTS" and "contracts, agreements, and materials from the US DOL [Department of Labor] and various state workforce agencies that speak to the larger nature of unemployment insurance systems, the federal funding process, and the underlying trade secret determination." (Document 201 at 2.) The United States contends that the Defendants have provided insufficient information regarding the certifications, seals, attestations, or signatures on the documents at issues to support an authentication ruling and argues that "there are other practical methods to authenticate documents…. such as obtaining Rule 902(aa) business records affidavits or negotiating for authenticity stipulations." (Document 246 at 4.)

8

The Court finds that any ruling on authenticity is premature until the Court can evaluate the nature and source of the documents. It also appears that the parties may be able to largely resolve the issue through stipulations, and the Court would encourage the parties to cooperate to avoid unnecessarily extending either motions practice or trial with authentication issues. Therefore, the Court **ORDERS** that *Defendant Sivaraman Sambasivam's and David Minkkinen's Motion in Limine to Admit Public Records Into Evidence* (Document 201) be **DENIED as premature**.

### 5.   Ownership of Trade Secrets

The Court has reviewed *Defendant Sivaraman Sambasivam's and David Minkkinen's Motion in Limine to Establish Ownership of Purported Trade Secret Materials Pursuant to an Unambiguous Written Contract* (Document 207), the *Government's Response in Opposition to Defendant Sivaraman Sambasivam's and David Minkkinen's Motion in Limine to Establish Ownership of Purported Trade Secret Materials Pursuant to an Unambiguous Written Contract* (Document 238), and *Defendant Sivaraman Sambasivam's and David Minkkinen's Reply to Government's Response (Dkt. 238) in Opposition to Defendants' Motion in Limine to Establish Ownership of Purported Trade Secret Materials Pursuant to an Unambiguous Written Contract (Dkt. 207)* (Document 254).

The Defendants contend that a contract between Deloitte's predecessor-in-interest, BearingPoint, and Massachusetts for modernization of Massachusetts' unemployment insurance system, establishes that the "deliverables," including the "source code, database, data tables, use cases, software design, business rules, schema, logic artifacts, and architecture" were owned by Massachusetts. (Document 207 at 5.) They ask the Court to interpret the contract as a matter of

9

law and establish the ownership of the materials at issue.   The United States contests the Defendants' reading of the contract and argues that, properly read, it provided for BearingPoint to maintain ownership of its trade secrets and intellectual property.   The United States also argues that the Court should not delve into the property rights of parties not before the Court.   Finally, it contends that the Court should preclude reference to the Massachusetts contract on Rule 403 grounds "[b]ecause the issue of proving the existence and ownership of a trade secret is immaterial to proving a charge of conspiracy to steal trade secrets."   (Document 238 at 7.)   In reply, the Defendants argue all of the charges in the Superseding Indictment require the United States to prove that Deloitte owned the material at issue.   They further argue that the terms of the contract are probative of the Defendants' belief that the material constituted a trade secret.

The Court finds that pre-trial interpretation of the contract is not warranted.   In the absence of a substantive trade secrets count, the issue to be resolved at trial centers on the Defendants' belief regarding the ownership and trade-secret status of the materials.   The contract is certainly probative to that belief, and the Court will reject the United States' request to preclude its introduction—but it is probative as to its influence on the Defendants' understanding of the status and ownership of the materials, rather than its actual legal impact.   Thus, even if the United States' interpretation of the contract is correct, evidence that the Defendants were aware of the contract and understood it to transfer ownership of the alleged trade secret and/or intellectual property material to Massachusetts would be exculpatory.

Therefore, the Court **ORDERS** that *Defendant Sivaraman Sambasivam's and David Minkkinen's Motion in Limine to Establish Ownership of Purported Trade Secret Materials Pursuant to an Unambiguous Written Contract* (Document 207) be **DENIED**.

10

6. *Omnibus Motion – Rules 401 and 403*

The Court has reviewed *Defendants Sivaraman Sambasivam and David Gerald Minkkinen's Omnibus Motions in Limine to Exclude Evidence that is Irrelevant or Has the Potential to Mislead, Confuse, or Prejudice the Jury* (Document 208), the *Government's Response in Opposition to Defendants Minkkinen and Sambasivam's Omnibus Motions in Limine to Exclude Evidence that is Irrelevant or Has the Potential to Mislead, Confuse, or Prejudice the Jury [ECF No. 208]* (Document 239), and *Defendants Sivaraman Sambasivam's and David Gerald Minkkinen's Reply to Government's Response in Opposition to Defendants' Omnibus Motions in Limine to Exclude Evidence that is Irrelevant or Has the Potential to Mislead, Confuse, or Prejudice the Jury [Dkt. 239]* (Document 255).

The Defendants seek to exclude (i) lay witness opinions that the uFACTS design documents are trade secrets or that the Defendants unlawfully possessed Deloitte uFACTS source code; (ii) use of the terms "intellectual property" or "trade secrets" without establishing that the evidence being discussed meets the legal definitions of those terms; (iii) the alleged failure of the Consortium project or alleged harm or loss to WorkForce West Virginia; (iv) references to the civil lawsuit brought by Deloitte against Sagitec (unopposed); (v) the Defendants' personal financial circumstances and income from Sagitec; and (vi) confidentiality designations from exhibits presented at trial.

The Defendants contend that lay witness testimony describing material as a trade secret would be irrelevant and prejudicial. They seek to exclude reference to the "trade secret" label noted in Paragraph 22 of the Superseding Indictment, which describes a document with a footer designating the document as "Deloitte Consulting LLP / Confidential – Trade Secret." They

11

further assert that the United States has not produced evidence that they actually possessed Deloitte uFACTS source code, and that witness speculation to the contrary should be precluded. The United States emphasizes that it need not prove that a trade secret actually existed. It indicates that it intends to offer evidence to establish that that Defendants "knew and had firm beliefs that the data they took, possessed, and used was proprietary in nature and confidential." (Document 239 at 4.) The Court finds that lay witnesses should not be permitted to offer their opinions or assessments as to the legal status of the material at issue and will not be permitted to testify that they believed certain material to be a trade secret but may testify based on their own knowledge and familiarity regarding how certain materials were typically treated. However, the document referenced in Paragraph 22 of the Superseding Indictment will be admitted without redaction in the form it existed at the time it was allegedly exchanged by the Defendants, as it is probative of their knowledge and belief of the status of the document. As to the allegation that the Defendants' possession of uFACTS source code relies on speculation, the Court concurs that speculative testimony is not admissible but declines the opportunity to characterize evidence or testimony that the Court has not seen.

The Defendants also argue that the terms "intellectual property" and "trade secrets" should not be treated as interchangeable. The United States argues that the Defendants' request would be unmanageable and contends that its burden of proof is merely that the Defendants believed that "the data was proprietary in nature and confidential, not that it was actually a trade secret." (Document 239 at 5.) The Court finds that the motion should be granted to the extent it would require the term "trade secrets" be used in accordance with its legal definition.

Next, the Defendants seek to exclude evidence of alleged harm to or loss claimed by Workforce West Virginia and any alleged failure of the Consortium Project in West Virginia. They note that West Virginia withdrew from the Consortium Project in April 2019, without official explanation, and seek to preclude introduction of documents or testimony by WorkForce WV employees speculating as to the reason for the agency's withdrawal. The United States contends that it has alleged a scheme to defraud the Maryland-West Virginia Consortium and Deloitte, and harm and loss are relevant. The Court finds that evidence of harm and loss are generally admissible, and any objections regarding the foundation or speculative nature of such evidence or testimony should be made at trial.

The Defendants seek to exclude reference to the civil lawsuit brought by Deloitte against Sagitec. The United States agrees that the civil suit is not relevant, and requests that the Defendants be precluded from arguing or offering testimony that the instant matter should be civil or that the criminal case was brought to improve Deloitte's civil litigation position. The Court grants the motion and precludes reference to the civil suit and any argument that this matter should be litigated as a civil matter.

The Court grants the Defendants' motion to preclude evidence of their personal finances but will permit evidence indicating an ownership interest in Sagitec and evidence of any financial gain resulting from the fraud alleged in the Superseding Indictment. Finally, the Court grants the motion to exclude confidentiality designations made pursuant to protective orders, although marks or designations affixed on documents by their owners or creators prior to litigation should not be removed.

13

The Court **ORDERS** that *Defendants Sivaraman Sambasivam and David Gerald Minkkinen's Omnibus Motions in Limine to Exclude Evidence That Is Irrelevant or Has the Potential to Mislead, Confuse, or Prejudice the Jury* (Document 208) be **GRANTED in part and DENIED in part** as set forth herein.

### 7.  Defense Expert – Shamos

The Court has reviewed the *Government's Motion to Exclude Improper Defense Expert Opinions* (Document 240) and the Defendants' *Response to Government's Motion to Exclude Improper Defense Expert Opinions (Dkt. 240)* (Document 261).   The United States seeks to bar Defense expert Michael Shamos from testifying about whether certain data contained trade secrets. It argues that the charge of conspiracy to steal trade secrets does not require proof of the existence of any trade secrets, and so expert testimony regarding whether information is a trade secret is irrelevant.   It also argues that Professor Shamos' report largely contains legal opinions that invade the province of the jury.

The Defendants argue that expert testimony that "there were in fact no 'trade secrets'…is very probative of the *reasonableness* of the Defendants' position that they never believed what they were alleged to have misappropriated were trade secrets belonging to Deloitte."   (Document 261 at 2.)   They indicate that Professor Shamos' opinions relate to the existence of trade secrets in this case, whether the data identified by the United States was owned by Deloitte, and whether such data was in the public domain.   They contend that "[e]xpert testimony regarding how ownership of intellectual property is acquired, maintained, or lost in this complicated area of the law would be incredibly helpful to a lay jury."   (*Id.* at 4.)   They argue that Professor Shamos would help the jury understand technical terms, industry standards and practices, and the complex

14

regulatory scheme surrounding the factual history in this case. They further argue that barring them from offering expert testimony "regarding trade secret attributes" would violate their Sixth Amendment right to present a defense. (*Id.* at 13.)

> Rule 702 of the Federal Rules of Evidence provides that:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court explained that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," emphasizing that the standard is flexible. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The Supreme Court further explained that the Rule 702 standard is permissive, given that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. The first requirement, that the expert testimony be helpful to the trier of fact, is the Rule's "touchstone." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993). To be helpful, the testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591.

Professor Shamos' report was prepared prior to the filing of the Superseding Indictment, and some of the legal concepts it discusses are no longer relevant. It also contains his legal opinions and interpretations of contracts, which the Court finds to be inappropriate incursions into the role of the Court in instructing the jury on the law and the jury in applying the law to the facts.

15

The Court finds that Professor Shamos' testimony purporting to offer interpretations of statutes, regulations, or contracts and his testimony regarding the development and funding of state unemployment insurance systems, including the specific systems at issue in this case, should be excluded.   Evidence regarding the interpretation of statutes, regulations, or contracts invades the province of the Court and the jury.   Professor Shamos' testimony regarding the development and funding of state unemployment insurance systems has little to no probative value given the issues presented in this case, and to the extent there is probative value, the same is substantially outweighed by the risk of prejudice and confusion given that his testimony would come in as that of an "expert".   However, his opinions as to industry standards, practices, and common understandings regarding varying degrees of protection for intellectual property, and how that protection may be lost (e.g., through certain types of federal contract, publication, or the copyright process) is probative of the Defendants' understanding and belief and could, therefore, aid the jury's understanding of issues relevant to resolution of these charges.   Accordingly, the Court **ORDERS** that the *Government's Motion to Exclude Improper Defense Expert Opinions* (Document 240) be **GRANTED in part and DENIED in part**, as set forth above.

### 8.   *Existence of Trade Secrets*

The Court has reviewed the *Government's Motion in Limine to Exclude Any Testimony or Evidence Demanding or Suggesting That It Identify, and Prove the Existence of, a Trade Secret* (Document 241) and *Defendants Sivaraman Sambasivam's and David Gerald Minkkinen's Response in Opposition to the Government's Motion to Exclude Any Testimony or Evidence Demanding or Suggesting That It Identify, and Prove the Existence of, a Trade Secret (Dkt. 241)* (Document 257).   The United States argues that to prove conspiracy to steal trade secrets, it need

16

not identify a trade secret meeting the legal definition of that term or prove that a trade secret was stolen.   The Defendants argue that, while the United States does not have to prove the existence of a trade secret, "[e]vidence that would convince a jury that certain material is a 'trade secret' pursuant to § 1839(3) is not meaningfully different from that which would prove an individual *believed* the material to be a trade secret."   (Document 257 at 1.)

The Court **ORDERS** that the *Government's Motion in Limine to Exclude Any Testimony or Evidence Demanding or Suggesting That It Identify, and Prove the Existence of, a Trade Secret* (Document 241) be **GRANTED**, finding that, as the parties agree, the United States is not required to prove the existence of a trade secret.[1]

### 9.  Original Indictment

The Court has reviewed the *Government's Motion in Limine to Exclude References to the Original Indictment* (Document 242) and *Defendants Sivaraman Sambasivam's and David Gerald Minkkinen's Response to Government's Motion in Limine to Exclude References to the Original Indictment (Dkt. 242)* (Document 260).   The United States argues that the original indictment has no probative value and references to it would confuse and mislead the jury.   The Defendants seek to reserve their rights to examine witnesses as to statements before the grand jury for the original indictment for impeachment purposes, but do not otherwise contend that reference to or argument based upon the original indictment would be admissible.   The Court **ORDERS** that the

---

1 The parties dispute whether the United States will have to prove that the Defendants believed the material they allegedly conspired to steal constituted trade secrets, or merely that they believed it to be proprietary or confidential. The ruling herein is not intended to indicate an adoption of the United States' position on that issue, but merely a finding that argument that it must prove the actual existence of a trade secret would be improper.   This ruling also does not preclude evidence as to whether the materials at issue were, in fact, trade secrets, which is relevant to whether the Defendants believed them to be trade secrets.

*Government's Motion in Limine to Exclude References to the Original Indictment* (Document 242) be **GRANTED**.

### *10. Legal Conclusions and Opinions in Sagitec Report*

Next, the Court has reviewed the *Government's Motion in Limine to Exclude Legal Conclusions and Non-Expert Opinions Contained in the Sagitec Investigation Report* (Document 243) and *Defendants Sivaraman Sambasivam's and David Gerald Minkkinen's Response in Opposition to Government's Motion in Limine to Exclude Legal Conclusions and Non-Expert Opinions Contained in the Sagitec Investigation Report (Dkt. 243)* (Document 263).

The United States argues that the conclusion in the Sagitec Report that no trade secrets were uncovered should be excluded because it is not required to prove the existence of trade secrets. In addition, it argues that "the opinions offered in the investigation report involved scientific, technical, or specialized knowledge in the fields of computer science, intellectual property, and commercial espionage activities" and are inadmissible under Rules 701, 702, 703, and 704. (Document 243 at 3.)

The Defendants contend that the Sagitec Report and its conclusions are relevant to intent. They note that the report was submitted to Sagitec on October 13, 2020, prior to the alleged end of the conspiracy in June 2021. In addition, the remaining counts assert fraud or false statements made after the draft of the Sagitec Report was submitted. Therefore, they contend that the conclusions in the report "are relevant evidence of what they would have believed at the time." (Document 263 at 3.) They suggest that a limiting instruction would resolve any potential prejudice. They contend that the Sagitec Report would not be introduced as an expert report or opinions, but "as a factual report by privately retained attorneys collecting information that

18

demonstrates circumstantial evidence of the defendants' state of mind and lack of criminal intent." (*Id.* at 4.)

As the Defendants point out, the report may be relevant as to their state of mind, knowledge and understanding after they reviewed it.   However, much of the alleged communications and acts took place prior to the investigation and report.   The Court **ORDERS** that the *Government's Motion in Limine to Exclude Legal Conclusions and Non-Expert Opinions Contained in the Sagitec Investigation Report* (Document 243) be **DENIED as premature**.   The Court further **ORDERS** that the parties approach prior to introducing evidence or testimony from the Sagitec Report to allow the Court to rule on its admissibility in the context in which it is offered.

### 11. Jury Nullification

The Court has reviewed the *Government's Motion in Limine to Preclude Arguments and Evidence Suggesting or Promoting Jury Nullification* (Document 244) and *Defendant Sivaraman Sambasivam's and David Gerald Minkkinen's Response to the Government's Motion in Limine to Preclude Arguments and Evidence Suggesting or Promoting Jury Nullification (Dkt. 244)* (Document 264).   The United States requests an order prohibiting argument or testimony regarding the potential penalties the Defendants would face if convicted, argument or testimony about the impact such convictions would have on the defendants' families or about the Defendants' age or physical infirmities, and argument about professional consequences they have already faced.

The Defendants indicate that they do not intend to offer evidence or argument promoting jury nullification or discussing criminal penalties.   However, they argue that they should be

19

permitted to present evidence about their "background, including age, education, work history, family, and other personal facts."   (Document 264 at 1.)

The Court **ORDERS** that the *Government's Motion in Limine to Preclude Arguments and Evidence Suggesting or Promoting Jury Nullification* (Document 244) be **GRANTED** to the extent it seeks to preclude evidence or argument promoting jury nullification, including testimony regarding potential penalties, the impact of any sentence or conviction, or professional consequences as an alternative to a criminal conviction.   However, the Defendants will be permitted to briefly introduce basic personal information.

### *12. Legal or Factual Impossibility*

The Court has reviewed the *Government's Motion in Limine to Exclude Defense of Legal or Factual Impossibility* (Document 245) and *Defendants Sivaraman Sambasivam's and David Gerald Minkkinen's Joint Response to the Government's Motion in Limine to Exclude Defense of Legal or Factual Impossibility (Dkt. 245)* (Document 265).   The United States seeks to preclude any argument that the Defendants could not have committed the offense of trade secrets theft because certain items or information do not meet the statutory definition of "trade secrets."   It contends that any arguments based on a legal or factual impossibility to commit a substantive trade secrets offense would be confusing, misleading, and create unfair prejudice.

The Defendants agree that the United States does not need to prove the existence of a trade secret but argue that its statement of the law suggesting that it need only prove that the Defendants believed materials were confidential or proprietary is incorrect.   They indicate that they "will not assert a defense based on factual impossibility [but] reserve the right to offer highly probative

20

evidence revealing that the material in question was not –and they did not believe it to be—trade secrets."   (Document 265 at 5.)

Again, the Court will not resolve disputes regarding the proper jury instructions through motions in limine.   The Court **ORDERS** that the *Government's Motion in Limine to Exclude Defense of Legal or Factual Impossibility* (Document 245) be **GRANTED**.   The motion, and this Order granting it, do not preclude the Defendants from introducing evidence that the material in question did not constitute trade secret(s) and/or evidence that they did not believe the material to constitute trade secrets.

### 13. Bill of Particulars

The Court has reviewed *Defendants Sivaraman Sambasivam's and David Minkkinen's Motion for a Bill of Particulars* (Document 112), which was referred to Magistrate Judge Omar J. Aboulhosn in accordance with the *Order of Reference* (Document 3) entered in this case.   Judge Aboulhosn entered an *Order* (Document 172) on May 18, 2023, granting in part and denying in part the motion for a bill of particulars.   The United States timely filed the *Government's Objection to Magistrate Judges' Order Granting, in Part, Defendants' Motion for a Bill of Particulars* (Document 195).   The United States filed a *Superseding Indictment* (Document 186) after Judge Aboulhosn entered his *Order*, and the Defendants addressed the United States' objections in *Defendant Sivaraman Sambasivam's Supplemental Briefing Regarding Motions Pending Before This Court* (Document 218).

Judge Aboulhosn found that granting the bill of particulars as to specific categories of evidence was appropriate to ensure the Defendants could understand the charges against them and

21

prepare for trial. Specifically, he granted requests seeking specific information related to the alleged trade secrets at issue and facts supporting venue.

The United States argues that Judge Aboulhosn's order is contrary to law and clearly erroneous, and in any event is mooted by the filing of the superseding indictment. It contends that it has provided more than adequate information through pre-indictment communications and the discovery process. The United States argues that it has sufficiently identified the trade secrets and intellectual property at issue, arguing that "Deloitte's entire software compilations, data, and use cases for the uFACTS product constitutes the trade secrets at issue." (Document 195 at 13.) It further asserts that it has "made numerous proffers detailing the intellectual property at issue and has disclosed such information in discovery" including "the defendants' employment contracts with Deloitte, which explicitly define what constitutes Deloitte's intellectual property." (*Id*. at 15.) It contends that prior rulings denying motions to dismiss based on venue are inconsistent with the order granting a bill of particulars to identify evidence of venue. Finally, it asserts that the superseding indictment alleviates the need for a bill of particulars because it omitted the substantive trade secrets count and contains more detail.

The Defendants contend that the bill of particulars order should be affirmed because it is not contrary to law or clearly erroneous, and the superseding indictment does not reduce their "need for the government to specify the alleged trade secrets and propriety of venue." (Document 218 at 6-7.) They note that during the hearing on the motion for a bill of particulars, the United States could not clearly identify the trade secret(s) at issue.

This issue was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). Both that provision and Rule 59(a) of the Federal Rules of Criminal Procedure provide that a

22

magistrate judge's ruling on fully referred, non-dispositive pretrial matters may be appealed to the district judge.   The district court must consider the objections and "modify or set aside any part of the order that is contrary to law or clearly erroneous."   Fed. R. Crim. P. 59(a).   However, the Court is not required to review the factual or legal conclusions of the magistrate judge as to those portions of the opinion to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

Judge Aboulhosn's order granting in part the bill of particulars provides a thorough and accurate overview of the law and the facts in this case, and the Court finds his application of the law to the facts to be well supported.   Although the superseding indictment alters the charges and elements to some degree, it does not alter the Defendants' need for the categories of information detailed in the Order partially granting the motion for a bill of particulars.   The Defendants should know exactly what materials constitute the object of the conspiracy to steal trade secrets alleged in Count One.   They also should know what they are alleged to have done in this District. Therefore, the Court **ORDERS** that the *Government's Objection to Magistrate Judges' Order Granting, in Part, Defendants' Motion for a Bill of Particulars* (Document 195) be **OVERRULED**.

### 14. Recusal

Finally, the Court has reviewed the *Government's Motion to Reconsider Recusal Order* (Document 317), *Defendant David Gerald Minkkinen's Memorandum in Opposition to Government's Motion to Reconsider Order to Recuse* (Document 318), and the *Government's Reply to the Defendant's Response to Motion to Reconsider Recusal Order* (Document 319).   The

23

Motion to Reconsider was filed on March 17, 2025, while this matter was on appeal on an unrelated issue. Jurisdiction is again with this Court, and the motion is ripe for ruling.

The Court previously entered a *Memorandum Opinion and Order* (Document 175) finding that AUSA Andrew Cogar and his support staff should be recused from this case. Investigation into this matter began in the Northern District of West Virginia, where Mr. Cogar is an Assistant United States Attorney. The United States Attorney for the Northern District of West Virginia at the time of the indictment and superseding indictment, William Ihlenfeld, represented Sagitec, the Defendants' employer, in relation to this investigation prior to his appointment as U.S. Attorney, and could potentially be a witness. The Court found that the potential conflict of interest and appearance of impropriety required the recusal of Mr. Cogar and his support staff.

The United States argues that because Mr. Ihlenfeld is no longer the U.S. Attorney for the Northern District of West Virginia, there is no longer any actual or perceived conflict of interest. Mr. Minkkinen contends that the United States has stated no legally cognizable basis for reconsideration. He argues that the United States waived any objections by appealing, then voluntarily dismissing its appeal of, the recusal order. He also challenges the timing of the motion for reconsideration: while the Court was divested of jurisdiction by the appeal and stay, but nearly two months after Mr. Ihlenfeld's resignation.

The Court finds that the United States has not set forth an adequate basis for reconsideration. In addition, the Court finds that the appearance of impropriety would not be alleviated by a revolving door for counsel, with actual or apparent conflicts of interest, to return to a case from which he was previously recused. Therefore, the Court **ORDERS** that the *Government's Motion to Reconsider Recusal Order* (Document 317) be **DENIED**.

24

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendants and their respective counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER:        April 14, 2026

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

25