**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v. CRIMINAL ACTION NO. 2:22-cr-00163

DAVID GERALD MINKKINEN,
SIVARAMAN SAMBASIVAM,

Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defendants Sivaraman Sambasivam's and David Gerald Minkkinen's Joint Motion to Dismiss Counts One Through Five and Memorandum of Law in Support* (Document 346), the United States' *Opposition to Joint Motion to Dismiss* (Document 351), and *Defendants Sivaraman Sambasivam's and David Gerald Minkkinen's Reply Memorandum in Support of Joint Motion to Dismiss Counts One Through Five* (Document 355). For the reasons stated herein, the Court finds that the motion to dismiss should be denied.[1]

## ALLEGATIONS IN THE SUPERSEDING INDICTMENT

The Defendants, Sivaraman Sambasivam and David Gerald Minkkinen, were indicted on August 23, 2022. A *Superseding Indictment* (Document 186) was returned on May 31, 2023. As to Defendant Sambasivam, the indictment charges that he has violated 18 U.S.C. § 1832(a)(5) (Conspiracy to Steal Trade Secrets), 18 U.S.C. §§ 1343 and 1349 (Conspiracy to Commit Wire Fraud), 18 U.S.C. §§ 1343 and 2 on three occasions (Wire Fraud and Aiding and Abetting Wire

---

[1] The Court has also issued an opinion granting a motion to suppress evidence, which may impact the United States' ability to present adequate evidence in support of the charges in the superseding indictment. However, the Court considers only legal adequacy of the superseding indictment in this opinion.

Fraud) and twice violated 18 U.S.C. § 1001(a)(2) (Making of a False Statement). As to Defendant David Minkkinen, the indictment charges that he has violated 18 U.S.C. § 1832(a)(5) (Conspiracy to Steal Trade Secrets), 18 U.S.C. §§ 1343 and 1349 (Conspiracy to Commit Wire Fraud), 18 U.S.C. §§ 1343 and 2 on three occasions (Wire Fraud and Aiding and Abetting Wire Fraud), and seven times violated 18 U.S.C. § 1001(a)(2) (Making of a False Statement).

Generally, the indictment alleges the following:

Deloitte owned and marketed a web-based software platform, Unemployment Framework for Automated Claim & Tax Services (uFACTS). This software platform was used to process unemployment claims for state agencies. The platform's "source code, database, data tables, use cases, software designs, business rules, schema, logic, artifacts, and architecture constituted Deloitte intellectual property." (Superseding Indictment ¶ 1.) This uFACTS platform had been implemented in Minnesota, New Mexico, and Massachusetts. The Defendants were employed by Deloitte, with Defendant Minkkinen as the Unemployment Insurance Practice Leader and Defendant Sambasivam as the lead system architect for the uFACTS Solution Framework.

Between June 2013 and December 2015, eleven employees left Deloitte and began to work for Sagitec Solutions, LLC, which also had an Unemployment Insurance practice. Mr. Minkkinen and Mr. Sambasivam separately left Deloitte and joined Sagitec in 2013. In their employment contracts with Deloitte, the Defendants agreed not to disclose any of Deloitte's proprietary property to third parties or retain the property. Defendant Minkkinen also was reminded through a resignation checklist that he was not to copy client or Deloitte information, and he was to return all records that he had checked out, or which were a work in progress. (Superseding Indictment ¶ 8.)

However, pursuant to an agreement between the Defendants, first Defendant Minkkinen, and then Defendant Sambasivam, copied and downloaded several pieces of Deloitte proprietary information, including the uFACTS source code, data, and use cases, without authorization.[2] For example, between 2013 and 2015, one or both of the Defendants copied or transferred to Sagitec an executive summary of Deloitte's response to a request for proposal, a marketing brochure, Deloitte's uFACTS related fraud detection deliverables for Wisconsin and Minnesota, use case documents from Deloitte's Massachusetts uFACTS project, the uFACTS Oracle database, the uFACTS Data Definition Language, a 227-page document titled the "uFACTS Solution Framework," and a spreadsheet titled "Deloitte Consulting Project Pricing Model." The information was mostly transmitted over email, sometimes between the two Defendants, other times including other Sagitec employees. In addition to information sent by the Defendants, there are emails sent by Sagitec employees to the Defendants, discussing additional information regarding Deloitte's uFACTS software, including the uFACTS code base and use cases.

Until on or about September 20, 2013, Defendant Sambasivam had been employed by Deloitte, but was communicating with Sagitec employees, including Defendant Minkkinen, about the uFACTS software. While still employed by Deloitte, Defendant Sambasivam emailed both a link and corresponding login information to a Sagitec employee for Deloitte's Massachusetts project.

In or about 2015, Sagitec was awarded a contract to design and develop an unemployment insurance benefit claim software system for the states of Maryland and West Virginia. The interests of the two states were combined into the Maryland-West Virginia Consortium

[2] More specific instances and examples of the copying and transmission of information from Deloitte are included in the Superseding Indictment ¶¶ 11-31.

(Consortium). In Sagitec's contract with the Consortium, signed by Defendant Minkkinen, Sagitec agreed that its work product would not infringe on the proprietary rights of a third party. The money to fund the project was provided by federal grants from the United States Department of Labor.

To complete the project, Sagitec employees worked with state employees from West Virginia and Maryland. In 2016, West Virginia state employees noticed that there were references to Massachusetts, New Mexico, and Deloitte within the project materials used by Sagitec. After seeing these references, an employee contacted the West Virginia Commission on Special Investigations. Upon learning of this complaint, a Maryland Assistant Attorney General (MD AAG) sent a letter to Defendant Minkkinen, raising concerns about the project including references to Massachusetts within Sagitec's documents. On or about July 25, 2016, Defendant Minkkinen replied to the MD AAG with a letter drafted with the help of Defendant Sambasivam, which said that references to other states were innocent, and due to Sagitec using them as examples "to discuss potential implementation options" for West Virginia and Maryland. (Superseding Indictment ¶ 34.) The Defendants made these statements despite their preexisting knowledge and firm belief that Deloitte considered the subject information to constitute trade secrets.

In reply, the MD AAG sent a follow-up letter to Defendant Minkkinen asking, in part, whether any Sagitec employees had "retained . . . any software, source code, data tables, data structures, data dictionaries, documentation, deliverables, or other works" belonging to Deloitte, or had incorporated such items into any work delivered to the Consortium. (Superseding Indictment ¶ 35.) In a response to this questionnaire, prepared by both Defendants, signed by Defendant Minkkinen, it was denied that any Sagitec personnel had ever retained any of the listed

information or had incorporated it into their work for the Consortium. This position was again stated by Defendant Minkkinen during a November 10, 2016 meeting with officials from Maryland's Department of Labor, Licensing, and Regulation.

Upon learning of a criminal investigation, Defendant Minkkinen sent copies of the response letters written to the MD AAG to the investigators in West Virginia and Virginia. During later interviews by an investigating agent in Charleston, West Virginia, both Defendants continued to deny any retention or use of Deloitte's proprietary information.

The Defendants have continued to repeatedly deny any improper use of Deloitte's uFACTS software. For example, Deloitte began accusing Sagitec of theft of trade secrets in 2016. Relying on statements made by the Defendants, Sagitec's counsel denied Deloitte's accusations.[3] In response to a later follow-up letter from Deloitte, with the assistance of the Defendants, Sagitec again denied that they had obtained any Deloitte proprietary materials.

**STANDARD OF REVIEW**

Rule 12(b)(3) provides that a motion to dismiss for failure to state an offense must be made before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(v). "An indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009) (citations and quotation marks omitted). In addition, "the indictment must include every essential element of the offense, or else

[3] Deloitte brought a civil claim for theft of trade secrets, specifically related to the uFACTS software, against Sagitec, which has been settled. *Deloitte Consulting LLP et al v. Sagitec Solutions LLC*, 1 :23-cv-325 (D. De. 2023).

the indictment is invalid; and mere reference to the applicable statute does not cure the defect." *Id.* "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Perry*, 757 F.3d 166, 171 (4th Cir. 2014) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "When a criminal defendant challenges the sufficiency of an indictment prior to the verdict, we apply a heightened scrutiny." *Kingrea*, 573 F.3d at 191.

**DISCUSSION**

The Defendants argue that Count One is barred by the statute of limitations because the only alleged conduct that occurred after the statute of limitations cutoff of August 23, 2017, was statements to investigators denying wrongdoing that "took place after the alleged conspiracy's objectives were attained." (Def.s' Mot. at 2.) They argue the recitation of the statutory language in Count One is insufficient to apprise them as to the nature of the charge, specifically regarding what criminal conduct was an object of the conspiracy after 2016. They contend that Count Two is likewise barred by the statute of limitations because they allegedly obtained Deloitte's intellectual property no later than 2013 and allegedly obtained any property interests associated with the Maryland-West Virginia Consortium contract no later than 2015. They argue that Counts Three through Five, the substantive wire fraud counts, fail to state an offense because the wires were sent after the Defendants had allegedly obtained the relevant property in 2015, and because the allegations as to those counts describe attempts to conceal wrongdoing rather than acts in furtherance of a scheme to defraud Deloitte or the Consortium. The wires in Counts Three through Five were initiated or induced by government investigators, and denials of wrongdoing

(some after West Virginia had exited the Consortium) did not further the alleged scheme to defraud.

The United States argues that the superseding indictment adequately alleges each count, and the facts are to be developed at trial. It argues that the superseding indictment alleges that the trade secrets conspiracy in Count One occurred from in or about July 2013 to in or about June 2021, and that dissemination of Deloitte trade secrets lasted until about April 8, 2019, well within the statute of limitations period. As to Count Two, it contends that "the object of the defendants' conspiracy was to obtain and use Deloitte trade secrets, misrepresent and hide the use of those trade secrets, and enable Sagitec to profit from the theft." (Gov't Resp. at 6.) It argues that the wire fraud conspiracy does not require an overt act and is presumed to continue until it is terminated or the defendant affirmatively withdraws for statute of limitations purposes. Finally, it contends that the substantive wire fraud counts are based on allegations that the defendants misrepresented and concealed the use of Deloitte trade secrets in the Sagitec software, in violation of the false assurances in the Consortium contract documents that the Sagitec software would not infringe on third-party intellectual property rights. It rejects the Defendants' theory that the objective had been obtained when the contract was signed, given that Sagitec continued to receive funds under the contract during the statute of limitations period. The United States indicates that it intends to put forth evidence to support each of the charges at trial.

Count One of the superseding indictment alleges that "from in or about July 2013 to in or about June 2021," the Defendants "did knowingly and willfully conspire and agree to steal trade secret information belonging to Deloitte." (Superseding Indictment at ¶ 43.) The superseding indictment further alleges that the Defendants transmitted, uploaded, and conveyed the alleged

trade secret information to WorkForce West Virginia and Microsoft SharePoint servers for use in the Consortium Project, from approximately January 2016 until at least on or about April 8, 2019. Thus, the superseding indictment alleges that the conspiracy, and acts in furtherance of the conspiracy, continued into the statute of limitations period. The Court finds that the United States has sufficiently set forth the elements of the offense. Whether it will be able to prove that a legally viable overt act occurred within the statute of limitations is a question for trial.[4] A properly instructed jury will be able to consider whether the United States meets its evidentiary burden, and the Court will be better able to consider any Rule 29 motion with the benefit of evidentiary context should the Defendant(s) bring such a motion.

Count Two alleges that the Defendants conspired to commit wire fraud in violation of 18 U.S.C. § 1349. The superseding indictment describes the object of the conspiracy as the use of Deloitte intellectual property in the Consortium project, the concealment of such use from the Consortium, WorkForce West Virginia, Deloitte, and other state and federal agencies, and to receive and retain funds for the project. It alleges that the Defendants made material misrepresentations about the use of Deloitte intellectual property in wire communications, including interviews with an investigator on or about October 1, 2020, and March 12, 2021. Again, the Court finds that the superseding indictment alleges the elements of the offense, and any evidentiary infirmity is better addressed after presentation of evidence at trial.

---

[4] *See, e.g.*, *Hardwire, LLC v. Ebaugh*, No. CV JKB-20-0304, 2021 WL 3809078, at *6–7 (D. Md. Aug. 26, 2021), for discussion of the scope of the criminal trade secrets statute, 18 U.S.C. § 1832, in contrast to the civil provisions contained in 18 U.S.C. § 1836, finding that ongoing use of allegedly stolen trade secrets may permit civil remedies, but "falls outside the scope of conduct prohibited under § 1832."

Counts Three through Five each allege that the Defendants, aided an abetted by one another, committed wire fraud in violation of 18 U.S.C. §§ 1343 and 2. It identifies wire communications that took place on specific dates and alleges that those communications were transmitted "for the purpose of executing, and attempting to execute, the scheme to defraud the Maryland-West Virginia Consortium and Deloitte and for obtaining money and property by false and fraudulent pretenses." (Superseding Indictment at ¶ 61.) Whether the United States can prove that those communications actually furthered a scheme to obtain money and property is a question for trial.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendants Sivaraman Sambasivam's and David Gerald Minkkinen's Joint Motion to Dismiss Counts One Through Five and Memorandum of Law in Support* (Document 346) be **DENIED**, without prejudice to any future motions or arguments addressing similar issues at an appropriate stage of proceedings.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendants and their respective counsel, to the United States Attorney, to the United States Probation Office, and to the Office of the United States Marshal.

ENTER: October 7, 2026

Irene C. Berger

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA